BERGEN COUNTY COURT OF SPECIAL SESSIONS.

THE STATE, v. JOHN K. O'GRADY, DEFENDANT.

Decided Septembr 26, 1941.

For the state, *John J. Breslin, Jr.,* prosecutor of the pleas (by *Nicholas A. Carella,* assistant prosecutor of the pleas).

For the defendant, *William V. Breslin* (by *Henry J. Bendheim*).

DELMAR, C. P. J.  From a judgment of conviction by Vincent F. X. Carlsen, Judge of the Police Court of the Palisades Interstate Park, whereby the defendant was found guilty of violating "section 4-50 of the Title 'Motor Vehicles and Traffic Regulation' of the Revised Statutes," the defendant has appealed to this court.

By virtue of *R. S.* 39:5-11; *N. J. S. A.* 39:5-11, this appeal operates as an application for a trial *de novo* in the Court of Special Sessions and not as a review of the proceedings by law.  Any defect in the conviction has been waived by this appeal.  *Newbury* v. *Lawrence,* 4 *N. J. Mis. R.* 267; 132 *Atl. Rep.* 306; *affirmed* (*Court of Errors and Appeals*), 103 *N. J. L.* 199; 134 *Atl. Rep.* 918.

At the trial in this court, the state and the defendant submitted the case to the court upon an agreed state of facts, which are substantially as follows: The defendant drove his automobile on to a ferryboat named "Englewood" on the New York side of the Hudson River.  The boat proceeded to cross the river and arrived at a dock on the New Jersey side,

owned by the Palisades Interstate Park Commission, and let by said Commission to a private corporation. This dock was used solely for the purpose of permitting passengers and vehicles to debark from the ferryboats, the vehicles debarking by means of a suspended bridge connected with the stationary portion of the dock. Upon arriving at the New Jersey side, after the ferryboat was secured to the dock, the defendant drove his automobile off the ferryboat and as it was driven on to the bridge or dock he was arrested by a policeman, who charged him with driving an automobile while under the influence of intoxicating liquor. The defendant admits that he was intoxicated and that he drove the automobile, as aforesaid, but contends that he is not guilty of violating *R. S.* 39 :4-50 as charged in the complaint, because the ferryboat and the bridge or dock, where he drove and where he was arrested, were not public places, and that the statute in question was intended to apply only to public places.

Counsel have not called to my attention any case where this question has been decided, nor has a careful search on my part disclosed any. There have been cases in other states, but too much weight should not be given to them because of the difference in the wording and the history of the various statutes. However, the opinion of Judge Hill of the County Court, Nassau County, New York, rendered on November 7th, 1940, in the case of The People of the State of New York *v.* James G. Evans, in construing the New York statute, which is similar to ours, is of some value in indicating how the judicial mind works. The New York statute is section 70, subdivision 5 of the Vehicle and Traffic Law. The learned judge notes that, "There is no reference to a public highway in this subdivision, and the court is unable to read 'public highway' into the section. It must be concluded, however, that the legislature intended to leave the words out and make it a crime for a driver to operate a motor vehicle anywhere, in an intoxicated condition.

"Automobiles have been declared to be dangerous instrumentalities and it can be readily understood why their operation by one who is intoxicated would be forbidden anywhere. One intoxicated, undertaking to drive an automobile, might

start to drive at a private place and get on a public highway by accident. Certainly the legislature intended to protect the life, limb and property of its citizens from such menace. (See *People* v. *Rue, 166 N. Y. Miscellaneous* 845)."

In New Jersey, the history of the present legislation may be traced back to chapter 67, *Pamph. L.* 1913, entitled "Supplement to an act entitled 'An act concerning disorderly persons (Revision of 1898)," which provided that "Any person * * * who shall operate an automobile or motor or any other vehicle over any public street or highway while under the influence of intoxicating liquors shall be adjudged to be a disorderly person." The punishment for a violation of this law was a prison sentence of not less than thirty days nor more than six months. This act was approved March 12th, 1913, and was repealed by chapter 184, *Pamph. L.* 1921 (at *p.* 488), which repealing act was approved April 7th, 1921, and took effect on January 1st, 1922. In its place, the legislature enacted chapter 208, *Pamph. L.* 1921, § 14 (3), approved April 8th, 1921, to take effect January 1st, 1922, which act was entitled, "An act defining motor vehicles and providing for the registration of the same and the licensing of the drivers thereof; fixing rules regulating the use and speed of motor vehicles; fixing the amount of license and registration fees; prescribing and regulating process and the service thereof and proceedings for the violation of the provisions of the act and penalties for said violations," in which act some changes were made in the wording of the legislation, particularly, all reference to any public street or highway was omitted therefrom. Significantly, the punishment for a violation of this act was a minimum imprisonment of thirty days and a maximum of six months, as in the previous act.

In construing a statute we must consider the old law, the mischief and the remedy. *Stephenson* v. *Stephenson, 102 N. J. Eq.* 50; *139 Atl. Rep.* 721; *State* v. *Rowe, 116 N. J. L.* 48: *181 Atl. Rep.* 706.

By codifying the laws relating to motor vehicles in chapter 208, *Pamph. L.* 1921, and repealing numerous prior acts relating thereto, the legislative intent is easy to ascertain. Previous legislation had been passed more or less in a hap-

hazard manner from time to time, as the need therefor arose. Codification brought all or most of the statutes relating to motor vehicles under a single title. The punishment under the 1913 act must have been considered by the legislature at the time to be satisfactory, as no change was made under the codification. Can it be said that the omission of the words "public street or highway" contained in the 1913 act was accidental and without any purpose? I think not. It seems clear to me that the legislature designedly omitted the stated words in order to enlarge the scope of operation of the statute.

The 1921 act, with some changes, which are unimportant in so far as the present case is concerned, is the same as the present law. The defendant strongly urges, inasmuch as the statute in question is highly penal in its nature and must under our well settled law be strictly construed, that the language of the statute must not be stretched so as to include offenses not specifically set forth therein. This may be readily conceded. Nevertheless, the operation of *R. S.* 39:4-50; *N. J. S. A.* 39:4-50, cannot be confined to public places without putting in the statute words which are not there.

Title 39, entitled, "Motor Vehicles and Traffic Regulation," describes many offenses, most of which are not violations of the particular provisions unless committed in public places, particularly on streets or highways. However, there are also offenses described therein which, the slightest reflection will indicate, are offenses, whether committed in public or private places. Article 9, section 4-48 forbids the operation of a motor vehicle without the permission of the owner. Certainly no one could logically read into this section any legislative intent to confine its operation to public places. Section 4-49 of the same article, concerns tampering with motor vehicles without the owner's permission. The next section is the one under consideration, relating to the operation of an automobile while under the influence of liquor or drugs. Like the two preceding sections, the language in no way indicates that the offense must be committed, if at all, in a public place. The next offense described in this article, in section 4-52, is racing on the public highway. The following one, section 4-53, relates to leaving a motor vehicle with its engine

running, stationary, on the highway, and the next, section 4-54, relates to motor vehicles or tractors on public highways.

Can it be said that the failure to mention public highways or places in the first three sections alluded to was accidental, in the light of the fact that the other three sections all specifically mention highways? It seems to me that a more reasonable interpretation is that these sections were all carefully prepared in the light of experience, and that the legislature has used the word highway or public highway when it so intended, and that when it did not so intend it meant that the offense was, nevertheless, a violation when committed in a private place.

The defendant lays great stress on that part of section 4-50, which provides that as a part of the punishment an offender, "Shall forthwith forfeit his right to operate a motor vehicle over the highways of this state," and contends that because of this part of said enactment the legislature had in mind that the offense could only be committed in a public place. I am unable to see any logic in this contention. It is true that by virtue of *R. S.* 39:3-10; *N. J. S. A.* 39:3-10, no person is permitted to drive a motor vehicle on a public highway unless licensed to do so in accordance with the provisions of said article. But, before obtaining such license, it is equally true that any person exhibiting the proper qualifications had a right to operate a motor vehicle over the highways of this state by complying with the provisions of said article. It is this right and not the license which is forfeited by virtue of the legislation in question. This must be quite clear, because for a first offense the forfeiture was for a period of two years from the date of conviction, whereas, the license is only in force for one year, and for a subsequent violation the forfeiture is perpetual. So that a person operating a motor vehicle in a private place, which he may do without obtaining a license therefor, upon being convicted of violating section 4-50, nevertheless, forfeits his right to obtain a license to drive a motor vehicle in a public place, for the period set forth in the statute and therefore his right to so operate an automobile.

The defendant further argues, that ordinarily there is so

little danger to the public from the operation of an automobile by an intoxicated person in a private place, that the legislature would provide a different punishment therefor than they provided for so operating an automobile in a public place. The answer to this is two-fold: First, that discretion is given to the magistrate, under the statute, both in the amount of the fine and the term of imprisonment, and it is presumed that such discretion will be used in the light of the individual characteristics of each case. Secondly, that the nature of the offense described in the legislation, is not in any way governed by the danger to the public. In such cases as *State* v. *Rodgers,* 91 *N. J. L.* 212; 102 *Atl. Rep.* 433, it has been pointed out that one driving an automobile, while under the influence of intoxicating liquor, is an offender, "Even though he drive so slowly and so skillfully and carefully that the public is not annoyed or endangered."

I, therefore, find the defendant guilty of operating an automobile while under the influence of intoxicating liquor, within the jurisdiction of this court, in violation of *R. S.* 39:4-50; *N. J. S. A.* 39:4-50, and he is, therefore, ordered to appear before this court so that judgment may be pronounced.