708 A.2d 416

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. GILBERTO E. NAVARRO, DEFENDANT–
APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted February 17, 1998—Decided March 25, 1998.

Before Judges PETRELLA, SKILLMAN and EICHEN.

*Ivelisse Torres*, Public Defender, attorney for appellant (*Jay L. Wilensky*, Assistant Deputy Public Defender, of counsel and on the brief).

*John Kaye*, Monmouth County Prosecutor, attorney for respondent (*Mark P. Stalford*, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

Defendant was indicted for possession of a weapon by a convicted felon, in violation of *N.J.S.A.* 2C:39-7b, and possession of a prohibited weapon, in violation of *N.J.S.A.* 2C:39-3d. Defendant filed a motion to suppress on the ground that the evidence against him had been obtained in an illegal search. The trial court denied the motion. Defendant subsequently pled guilty to the charge of

possession of a weapon by a convicted felon pursuant to a plea bargain which reserved his right to appeal from the denial of the motion to suppress. In accordance with the terms of the plea bargain, the court granted the State's motion to dismiss the charge of possession of a prohibited weapon. The court sentenced defendant to a five year term of imprisonment, to be served concurrently with a sentence he was already serving for a violation of parole.

The only argument defendant presents on appeal is that the trial court erred in denying his motion to suppress because the evidence upon which his conviction was based was obtained in violation of the Fourth Amendment to the United States Constitution and Article I, paragraph 7, of the New Jersey Constitution. Therefore, it is appropriate to review the testimony presented at the hearing on defendant's motion.

In the late afternoon of July 31, 1995, defendant's landlady, Media Aguilar, came to the headquarters of the Long Branch Police Department and informed Sergeant John Callery that she had discovered a gun in defendant's bedroom, which was located within the apartment she occupied with her family. Aguilar told Callery that because there were several small children living in the apartment she wanted to determine whether the gun was real or a toy. Aguilar also indicated that she did not know when defendant, who had a construction job with variable hours, would be returning to the apartment. When the police expressed reluctance to enter defendant's apartment, Aguilar became upset and told the police "she would go get the gun herself." At this point, Callery agreed to accompany Aguilar back to her apartment because, in his words, "I couldn't have her handling a weapon especially if she was unfamiliar with the weapon and if she thought it was a toy."

When Sergeant Callery and another officer arrived at Aguilar's apartment, she took them to defendant's room, opened his closet, pulled out a metal box, placed it on the bed, and opened it. Aguilar pointed to a sock in the box, which appeared to have

something inside it. Callery picked up the sock, which resulted in the discovery of a handgun and eight rounds of ammunition.

█ Aguilar, who defendant called as a witness in support of the motion to suppress, testified that she obtained access to defendant's box by forcing it open with a screwdriver. She also testified that the doors to defendant's bedroom and closet were closed when she entered to search for the gun, which defendant had previously shown to her niece.

█ The prohibition against "unreasonable searches and seizures" contained in the Fourth Amendment to the United States Constitution and Article I, paragraph 7, of the New Jersey Constitution applies only to governmental action. *United States v. Jacobsen,* 466 *U.S.* 109, 113, 104 *S.Ct.* 1652, 1656, 80 *L. Ed.*2d 85, 94 (1984); *State v. Saez,* 139 *N.J.* 279, 653 *A.*2d 1130 (1995), *rev'g on dissent,* 268 *N.J.Super.* 250, 270–79, 633 *A.*2d 551 (App.Div. 1993), *cert. denied,* 516 *U.S.* 906, 116 *S.Ct.* 273, 133 *L. Ed.*2d 194 (1995). It is "wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'" *Jacobsen, supra* (quoting *Walter v. United States,* 447 *U.S.* 649, 662, 100 *S.Ct.* 2395, 2404, 65 *L. Ed.*2d 410, 421 (1980) (Blackman, J., dissenting)); *see generally* 1 Wayne R. LaFave, *Search & Seizure: A Treatise on the Fourth Amendment* (3d ed.1996) § 1.8. Thus, if Aguilar had removed defendant's gun from the box and brought it to the police station, the police could have temporarily retained the gun until they determined whether defendant's possession was lawful. *See Coolidge v. New Hampshire,* 403 *U.S.* 443, 487, 91 *S.Ct.* 2022, 2048, 29 *L. Ed.*2d 564, 595 (1971); *United States v. Coleman,* 628 *F.*2d 961, 966 (6th Cir.1980) (holding that "there is no seizure within the meaning of the fourth amendment when an object discovered in a private search is voluntarily relinquished to the government"); *State v. Araki,* 82 *Hawai'i* 474, 923 *P.*2d 891, 897–98 (1996) (same); *see also Saez, supra,* 139 *N.J.* at 281, 653 *A.*2d 1130. The question is whether a different result is required because Aguilar did not

bring the gun to the police station but instead persuaded the police to accompany her back to her apartment and subsequently took them to the closet in defendant's bedroom where the gun was kept.

When the police agreed to accompany Aguilar, they did not have probable cause to believe defendant had committed a crime. Aguilar told the police she did not know whether what she had found was a real gun or a toy; in fact, she "thought it was a toy[,][b]ut wasn't sure." Moreover, even if the object which Aguilar had requested the police to inspect turned out to be a gun, the police did not have any information that defendant had obtained the gun unlawfully or that he was a person who was prohibited from owning or possessing a firearm.[1] Thus, the police could not have obtained a warrant to search defendant's room at that time. In addition, Aguilar's statement that she would retrieve the gun herself if the police refused to accompany her presented the police with an emergency situation. The police were confronted with the choice of either accompanying Aguilar to her apartment and inspecting the apparent gun, or doing nothing, knowing that in that event Aguilar would probably take steps by herself to remove it from the apartment.

█ It is now well recognized that in addition to investigating crimes, the police also engage in what has been "described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski,* 413 *U.S.* 433, 441, 93 *S.Ct.* 2523, 2528, 37 *L. Ed.*2d 706, 715 (1973); *see State v. Hill,* 115 *N.J.* 169, 174–75, 557 *A.*2d 322 (1989); *State v. Scott,* 231 *N.J.Super.* 258, 276–77, 555 *A.*2d 667 (App.Div.1989) (Ashbey, J., dissenting), *rev'd on dissent,* 118 *N.J.* 406, 571 *A.*2d 1304 (1990); *see also United States v. York,* 895 *F.*2d 1026 (5th Cir.1990); *see*

---

[1] We note that a person may keep a handgun within his residence without obtaining a permit to carry a handgun pursuant to *N.J.S.A.* 2C:58–4. *N.J.S.A.* 2C:39–6e.

*generally,* 3 LaFave, *supra,* § 6.6. A danger that children or other persons who are inexperienced in the use of firearms may obtain access to a gun is one circumstance which may justify the police entering private property in the performance of their community caretaking responsibilities. *See Cady v. Dombrowski, supra* (holding that the search of an automobile's trunk which the police reasonably believed to contain a revolver constituted reasonable exercise of caretaker function because the trunk was "vulnerable to intrusion by vandals"); *see also United States v. Antwine,* 873 *F.*2d 1144, 1146–47 (8th Cir.1989); *State v. Lakomy,* 126 *N.J.Super.* 430, 315 *A.*2d 46 (App.Div.1974).

█ We conclude that the action of the police in accompanying Aguilar to her apartment constituted a reasonable exercise of their community caretaking responsibilities. The police were aware that Aguilar had discovered an object which appeared to be a gun, that she was extremely agitated by this discovery, and that she intended to remove the object herself if they refused to help her. Consequently, the police had a justifiable concern that Aguilar could injure herself or others if the object turned out to be a gun. The police also could have had a legitimate concern that Aguilar's discovery of a gun among defendant's personal belongings could precipitate a violent confrontation with defendant upon his return from work. Moreover, Aguilar's possession of the gun while removing it from her apartment could have constituted a violation of *N.J.S.A.* 2C:39–5b, which prohibits possession of a handgun without a permit. Thus, by acceding to Aguilar's request to inspect the apparent gun, the police not only avoided the potential safety hazard of Aguilar handling and carrying a gun but also may have prevented her from committing a crime. "The ultimate standard" of the Fourth Amendment and Article I, paragraph 6, of the New Jersey Constitution is one of "reasonableness." *Cady v. Dombrowski, supra,* 413 *U.S.* at 439, 93 *S.Ct.* at 2527, 37 *L. Ed.*2d at 713; *see State v. Bruzzese,* 94 *N.J.* 210, 216–17, 463 *A.*2d 320 (1983), *cert. denied,* 465 *U.S.* 1030, 104 *S.Ct.* 1295, 79 *L. Ed.*2d 695 (1984). Because we find nothing unreasonable in the actions of

the police which resulted in the seizure of defendant's gun, we affirm the denial of his motion to suppress.

Affirmed.