739 A.2d 1016 (1999)
325 N.J. Super. 521
STATE of New Jersey, Plaintiff-Respondent,
v.
Luke GARBIN, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued September 22, 1999.
Decided November 18, 1999.
*1017 John H. Waller, for defendant-appellant (Sufrin, Zucker, Steinberg, Waller & Wixted, attorneys; Mr. Waller, on the brief).
Stephen R. Piper, Assistant Camden County Prosecutor, for plaintiff-respondent (Lee A. Solomon, Camden County Prosecutor, attorney; Mr. Piper, of counsel and on the brief).
Before Judges SKILLMAN and NEWMAN.
The opinion of the court was delivered by SKILLMAN, P.J.A.D.
Defendant was charged in the Pine Hill Municipal Court with driving while under the influence of alcohol, in violation of N.J.S.A. 39:4-50. Defendant moved to suppress the evidence against him on the ground it had been obtained by means of an unlawful search. Defendant also moved to dismiss the complaint on the ground that he could not be found guilty of a violation of N.J.S.A. 39:4-50 for operating a vehicle while under the influence of alcohol in the garage of his own home.
At the hearing on the motions, Officer Browne of the Pine Hill Police Department testified that in the late afternoon of September 14, 1997, he was dispatched to defendant's home to investigate a report of a possible fire. Upon his arrival, the officer observed smoke coming from defendant's *1018 garage and smelled burning rubber. The door to the garage started to open, but after it rose approximately three feet, it came down. A little while later, the door opened all the way, and the officer observed a pickup truck with a person in the driver's seat. He started to walk from the street towards the garage, but when he got close, the door closed again. The officer pounded on the garage door and said, "police department, open up the door." A few seconds later, the door opened. As Officer Browne and another officer entered the garage, they observed the tires of defendant's truck spinning, creating smoke, and the front bumper pushing against the rear of the garage. Officer Browne opened the door of the truck and turned off the ignition. The officers subsequently identified defendant as the person in the driver's seat.
Based on this evidence, the municipal court judge concluded that the officers' entry into defendant's garage and subsequent actions within the garage were valid under the "community caretaker doctrine." The judge also concluded that a violation of N.J.S.A. 39:4-50 can be predicated upon the operation of a motor vehicle within a private garage. In addition, the judge indicated that the evidence would not support a finding that defendant operated his truck outside the garage prior to the officers' arrival on the scene.
Defendant then pled guilty to the charge, but conditioned his plea on the right to appeal from the denial of his motions. The municipal court judge sentenced defendant, who had a prior conviction under N.J.S.A. 39:4-50, to a two-year suspension of his driver's license and thirty days of community service. The court also required defendant to spend forty-eight hours in the intoxicated driver's resource center, fined him $500 and imposed the statutorily mandated penalties, fees and costs.
On a de novo appeal, the Law Division judge concluded that Officer Browne had properly entered defendant's garage to determine whether there was a condition which posed an imminent danger to persons or property and affirmed the denial of defendant's motion to suppress. The judge also concluded that defendant's operation of a vehicle within his own garage while under the influence of alcohol constituted a violation of N.J.S.A. 39:4-50. Accordingly, the judge affirmed defendant's conviction and reimposed the same sentence.

I
Defendant argues that the police officers' warrantless entry into his garage violated his rights under the Fourth Amendment to the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution. The State responds that the entry was valid under the community caretaking doctrine.
"It is now well recognized that in addition to investigating crimes, the police also engage in what has been `described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.'" State v. Navarro, 310 N.J.Super. 104, 108, 708 A.2d 416 (App.Div.1998) (quoting Cady v. Dombrowski, 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706, 715 (1973)). The performance of these police responsibilities may provide the requisite authority for entry into a private residence without a warrant. State v. Scott, 118 N.J. 406, 571 A.2d 1304 (1990), rev'g on dissent, 231 N.J.Super. 258, 269-77, 555 A.2d 667 (App. Div.1989); State v. Navarro, supra, 310 N.J.Super. at 109-10, 708 A.2d 416. As former Chief Justice (then Judge) Burger observed in Wayne v. United States, 318 F.2d 205, 212 (D.C.Cir.1963):
[A] warrant is not required to break down a door to enter a burning home to rescue occupants or extinguish a fire, to prevent a shooting or to bring emergency aid to an injured person. The need to protect or preserve life or avoid serious *1019 injury is justification for what would be otherwise illegal absent an exigency or emergency.
See also Mincey v. Arizona, 437 U.S. 385, 392-93, 98 S.Ct. 2408, 2413-14, 57 L.Ed.2d 290, 300 (1978); People v. Ray, 21 Cal.4th 464, 88 Cal.Rptr.2d 1, 981 P.2d 928 (1999); State v. Alexander, 124 Md.App. 258, 721 A.2d 275 (1998); State v. Leandry, 151 N.J.Super. 92, 97, 376 A.2d 574 (App.Div. 1977); see generally 3 Wayne R. LaFave, Search & Seizure: A Treatise on the Fourth Amendment § 6.6 (3d ed.1996); Debra Livingston, Police, Community Caretaking, and the Fourth Amendment, 1998 U. Ch. Legal F. 261.
A police officer's observation of a person operating a motor vehicle in a manner that indicates something may be wrong with the vehicle or its driver is one recognized circumstance in which the police may take appropriate action in the performance of their community caretaking responsibilities. For example, in State v. Martinez, 260 N.J.Super. 75, 78, 615 A.2d 279 (App.Div.1992), we stated that a police officer's observations of a motor vehicle being driven at less than ten m.p.h. "suggest[ed] a number of objectively reasonable concerns," including that "something might be wrong with the car ... [or] its driver." Consequently, we held that these concerns justified "the minimal intrusion involved in a simple inquiry stop." Ibid. Similarly, in State v. Goetaski, 209 N.J.Super. 362, 507 A.2d 751 (App.Div. 1986), we upheld the validity under the community caretaking doctrine of a stop of a person who was driving slowly on the shoulder of a state highway with his left turn directional signal flashing. We concluded that observations of such unusual operation of the vehicle provided a reasonable basis for the police officer to believe that there was something wrong with the vehicle or its driver. Id. at 366, 507 A. 2d 751.
The same considerations justified the police officers' entry into defendant's garage. Their observations of smoke emanating from the garage and the wheels of defendant's truck rapidly spinning provided a reasonable basis for concern that there was something wrong with the vehicle or its driver. Those observations could have indicated that the car was stuck in a driving gear, that the driver was unconscious or attempting to commit suicide or, as turned out to be the case, that he was highly intoxicated. Under these circumstances, the police officers would have been remiss in the performance of their community caretaking responsibilities if they had failed to investigate further. Moreover, the officers' entry into defendant's garage was not significantly more intrusive than the motor vehicle stops involved in Goetaski and Martinez. Therefore, the lower courts properly denied defendant's motion to suppress.

II
Defendant argues that he could not be found guilty of a violation of N.J.S.A. 39:4-50, because the lower courts found that the evidence would not support a finding that he operated his vehicle outside his garage. Defendant relies upon the Supreme Court's statement of the holding in State v. Sweeney, 40 N.J. 359, 360-61, 192 A.2d 573 (1963):
[A] person "operates"or for that matter, "drives"a motor vehicle under the influence of intoxicating liquor, within the meaning of N.J.S.A. 39:4-50 and 39:4-50.1, when, in that condition, he enters a stationary vehicle, on a public highway or in a place devoted to public use, turns on the ignition, starts and maintains the motor in operation and remains in the driver's seat behind the steering wheel, with the intent to move the vehicle, and that in this case the trial court could clearly infer such intent from the evidence.
(Emphasis added).
Defendant also relies upon the statement in State v. Mulcahy, 107 N.J. 467, 477-78, 527 A.2d 368 (1987) that "when one in an *1020 intoxicated state places himself behind the wheel of a motor vehicle and not only intends to operate it in a public place, but actually attempts to do so (even though the attempt is unsuccessful) and there is the possibility of motion, he violates the statute." (Emphasis added)(quoting State v. Stiene, 203 N.J.Super. 275, 279, 496 A.2d 738 (App.Div.1985)).
However, the only issue in Sweeney and Mulcahy was whether the defendants could be found to have "operate[d]" their vehicles within the intent of N.J.S.A. 39:4-50 even though they did not actually drive them. The Court answered this question affirmatively in both cases, concluding that Sweeney "operated" his vehicle when he turned on the ignition with the intent to drive and that Mulcahy "operated" his vehicle when he took his keys and started to put them in the ignition with the intent to drive. Because Sweeney was parked by the curb of a street, see State v. Sweeney, 77 N.J.Super. 512, 514, 187 A.2d 39 (App.Div.1962), and Mulcahy was parked on a sidewalk, 107 N.J. at 469, 527 A.2d 368, the Court did not have the occasion in either opinion to consider whether N.J.S.A. 39:4-50 only applies to the operation of a motor vehicle in a public or quasi-public place. Therefore, the statements in those opinions relied upon by defendant are only dicta.
Although the Supreme Court has never considered the issue, we held in two opinions that N.J.S.A. 39:4-50 applies to any operation of a motor vehicle while under the influence of alcohol. In State v. Magner, 151 N.J.Super. 451, 376 A.2d 1333 (App.Div.1977), the defendant was charged with driving while under the influence in a private beach club parking lot from which the general public was excluded. We characterized this parking lot as a "nonpublic area," and stated that the issue presented was whether N.J.S.A. 39:4-50 applies to "drunken or impaired driving on private lands." Id. at 453, 376 A.2d 1333. We noted that "if a motor vehicle statute makes no references to offenses occurring on a public highway, it is usually held that the statute applies generally throughout the State." Id. at 454, 376 A.2d 1333. We concluded that N.J.S.A. 39:4-50 should be construed in accordance with this principle to apply to "drunken operation of a motor vehicle, irrespective of where it [takes] place," because "[o]peration of a motor vehicle while under the influence of intoxicating liquor holds no less threat of extraordinary danger of injury to the driver and others or damage to property because that particular folly is performed in a private place than it would were it to occur in a quasi-public or public place." Id. at 453-54, 376 A.2d 1333.
In State v. McColley, 157 N.J.Super. 525, 385 A.2d 264 (App.Div.1978), we reaffirmed our holding in Magner in a case involving the operation of a motor vehicle in a moving company's private parking lot. We stated in the course of our opinion that Magner stands for the proposition that "the nature of the property on which the driving occurred is irrelevant." Id. at 528, 385 A.2d 264.
Defendant argues that we should reject the holding in Magner and McColley and construe N.J.S.A. 39:4-50 to apply only to operation of a motor vehicle in a public or quasi-public place, because a driver may be found guilty of refusing to submit to a chemical test under the Implied Consent Law, N.J.S.A. 39:4-50.2 to 50.4a, only if the court finds that "the arresting officer had probable cause to believe that the person had been driving or was in actual physical control of a motor vehicle on the public highways or quasi-public areas of this State while under the influence...." N.J.S.A. 39:4-50.4a (emphasis added). Defendant contends that "if in order to obtain the proof of intoxication necessary to convict a Defendant of [DWI], one [has] to operate on a public or quasi-public area, the `operation' required to prove the substantive offense must likewise be on a public road, street, highway or quasi-public area."
*1021 We decline to read the Implied Consent Law as limiting the scope of the prohibition against operating a motor vehicle while under the influence of alcohol. Initially, we note that the prohibition against operation of a motor vehicle while under the influence and the Implied Consent Law have separate legislative histories. The prohibition against operation of a motor vehicle while under the influence dates back to at least 1913. L. 1913, c. 267. Although the prohibition originally applied only to the operation of a motor vehicle "over any public street or highway," ibid., this limitation was omitted from the 1921 reenactment of the state's motor vehicle laws. L. 1921, c. 208, § 14. In State v. O'Grady, 19 N.J. Misc. 559, 563, 21 A.2d 864 (Bergen Cty. Ct.1941), the court concluded that "the legislature designedly omitted the ... words [public street or highway] to enlarge the scope of operation of the statute," 19 N.J. Misc. at 562, 21 A.2d 864, and that the offense of driving while under the influence could be committed in either a "public" or "private" place. Id. at 563, 21 A.2d 864. In Magner, we referred to this same legislative history and concluded that "[t]he failure to include language [in the 1921 Motor Vehicle Act] limiting the offense to public streets and highways persuades us that it was the intention of the Legislature to deal with drunken operation of a motor vehicle, irrespective of where it took place, for ordinarily a change in legislative language signifies a purposeful alteration in the substance of the law." 151 N.J.Super. at 453, 376 A.2d 1333.
In its original form, the Implied Consent Law would have applied only to a person who operated a motor vehicle on a "public road, street or highway." However, a representative of the State Police pointed out during legislative hearings that N.J.S.A. 39:4-50 had been interpreted to apply to operation under the influence in places other than public roads, streets and highways. Public Hearings on Senate Bill No. 8 [Driving While Impaired] & Senate Bill No. 9 [Implied Consent] Before the Senate Comm. on Law & Pub. Safety (1966), Feb. 28, 1966 hearing at 24A. Thereafter, the bill was revised to provide that a person who operates a motor vehicle in a "quasi-public area" is also subject to the Implied Consent Law. Official Copy Reprint, Senate Bill No. 9 of 1966. The legislative history does not indicate why the reach of the Implied Consent Law was limited to a person who operates a motor vehicle on "any public road, street or highway or quasi-public area." However, we note that when the Implied Consent Law was enacted, there were questions concerning its constitutionality, Public Hearings on Senate Bill No. 8 & Senate Bill No. 9, supra, Feb. 21, 1966 hearing at 21-28, and Feb. 28, 1966 hearing at 1A-8A, and one theory relied upon to support its validity was that "driving upon the highway acted as ... consent to the taking of samples of [the driver's] breath." State v. Kenderski, 99 N.J.Super. 224, 230, 239 A.2d 249 (App.Div.1968). Consequently, the Legislature could have been concerned that it would be more difficult to defend the constitutionality of the statute if it extended to operation of a motor vehicle in private places. Therefore, the difference in language between N.J.S.A. 39:4-50 and N.J.S.A. 39:4-50.4 does not mandate reconsideration of Magner and McColley.
Moreover, we are mindful that Magner and McColley, which construed N.J.S.A. 39:4-50 to apply to "drunken operation of a motor vehicle, irrespective of where it [takes] place," Magner, supra, 151 N.J.Super. at 454, 376 A.2d 1333, were decided more than twenty years ago. "[W]hen a statute has been judicially construed, the failure of the Legislature subsequently to act is evidence of legislative acquiescence in the construction given to the statute." Cavuoti v. New Jersey Transit Corp., 161 N.J. 107, 133, 735 A.2d 548 (1999). Legislative inaction is especially significant in a case such as this, where the judicial construction is long-standing, the statute deals with a subject that attracts substantial public and legislative *1022 attention, and the statute has been amended on numerous occasions subsequent to the judicial construction without change in the pertinent language. See, e.g., L. 1981, c. 47, § 1; L. 1983, c. 129, § 1; L. 1986, c. 126, § 1; L. 1993, c. 296, § 6; L. 1997, c. 277, § 1.
We recognize that none of the cases which have interpreted N.J.S.A. 39:4-50 have extended its reach as far as the garage of a private residence. However, we do not perceive any basis under the language of N.J.S.A. 39:4-50 to distinguish between operation of a motor vehicle in a private garage and operation in other private places such as the private parking areas involved in Magner and McColley. Moreover, we note that operation of a motor vehicle on private property can pose risks to the general public. For example, in his highly intoxicated condition defendant could have put his truck in reverse and gone crashing through the garage door into the nearby street. The Legislature also could have had a justifiable concern that operation of a motor vehicle on private property while under the influence may cause injury or death to the driver or other occupants of the property.
Affirmed.