975 A.2d 967 (2009)
408 N.J. Super. 584
STATE of New Jersey, Plaintiff-Respondent/Cross-Appellant,
v.
Philip BERTRAND, Defendant-Appellant/Cross-Respondent.
DOCKET NO. A-2378-07T4.
Superior Court of New Jersey, Appellate Division.
Submitted May 27, 2009.
Decided August 3, 2009.
*968 Stabile Law Firm, Woodbridge, for appellant/cross-respondent (Steve Stabile, on the brief).
Edward J. De Fazio, Hudson County Prosecutor, for respondent/cross-appellant (Gina Giordano, Assistant Prosecutor, on the briefs).
Before Judges WEFING, YANNOTTI and LEWINN.
The opinion of the court was delivered by
WEFING, P.J.A.D.
Following a trial de novo in the Law Division, defendant was found guilty of refusal to provide breath samples, N.J.S.A. 39:4-50.2. He has appealed from that conviction. The State has cross-appealed from the sentence imposed by the Law Division, contending it was an illegal sentence. After reviewing the record in light of the contentions advanced on appeal, we affirm defendant's conviction but remand for resentencing.
Shortly after one o'clock on the morning of April 24, 2007, several members of the Union City Police Department responded to the apartment complex known as Troy Towers, located at 380 Mountain Road in Union City, to a report of a motor vehicle accident involving a possibly intoxicated driver. Four members, Officers Gonzalez, DePinto, D'Andrea, and Sergeant Botti, testified at the subsequent proceedings in Union City municipal court. Officer Gonzalez was the first on the scene. She said that she came upon defendant sound asleep on a bench near the security guard's booth. Witnesses estimated the distance between the bench and the spot where defendant's car had been left at between twenty and forty feet. Defendant's car was not in its assigned spot in the garage and had been left facing the wrong way. The keys were in the ignition but there was no testimony from anyone who saw defendant operating the car.
Officer Gonzalez had difficulty awakening defendant. Once she roused defendant, she and the other officers came to the conclusion that he was intoxicated. His face was flushed, he smelled of alcohol, and he was belligerent. He refused to perform any of the field sobriety tests without first consulting an attorney. Sergeant Botti directed that defendant be placed under arrest and taken to police headquarters. At police headquarters, the police read to defendant the standard statement seeking his consent to provide breath samples. Defendant, however, refused to do anything without first consulting with an attorney. He was then charged with violating both N.J.S.A. 39:4-50, driving while intoxicated, and N.J.S.A. 39:4-50.2, refusing to provide breath samples.
At the conclusion of the State's case in municipal court, defendant moved for a directed verdict on both charges. The trial court granted defendant's motion to dismiss the charge of driving while intoxicated, there being no proof that defendant had operated the vehicle. It denied, however, the motion to dismiss the charge of refusing to provide a breath sample and found defendant guilty of that offense. State v. Wright, 107 N.J. 488, 490, 527 A.2d 379 (1987) (holding that actual operation *969 of a vehicle is not an element of N.J.S.A. 39:4-50.2; it is sufficient if the police had probable cause to believe the defendant had been driving while intoxicated).
Defendant appealed to the Law Division and, in addition to the record of the municipal court trial, the parties submitted the following stipulated facts: the parking garage for Troy Towers included 345 parking spaces; the garage was constructed on four levels; residents of Troy Towers enter the parking garage through use of an access card with a photo identification; and visitors and tradesmen were not generally permitted to park in the garage. The parties also stipulated that parking in the garage was controlled by the following regulations:
Exterior Parking
23. The upper south parking lot is for guest parking. In order to park in this lot, the guest must register his or her vehicle with the Concierge (name of resident & apartment number, make of car, color, and license number). The Concierge will allocate a space and provide the Guest with a Parking Permit, which must be visible from the outside of the vehicle at all times.
23.3 Guest parking is not for use by residents.
Garage
24. Parking spaces in the garage are for Troy Towers' residents only. The parking spaces are rented to residents on a separate contract at a monthly rate approved by the Board of Directors.
24.3 If a resident wishes to have a vehicle, other than the registered vehicle, park in the garage, permission must be obtained in advance from the Management Office (not the Concierge). Failure to do so can result in the vehicle's being towed.
Defendant was again found guilty, and he has appealed to this court, raising the following arguments for our consideration:
POINT I DEFENDANT'S CONVICTION FOR REFUSAL TO PROVIDE BREATH SAMPLES MUST BE REVERSED BECAUSE THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT THE TROY TOWERS ARE QUASI-PUBLIC PROPERTY.
POINT II DEFENDANT'S CONVICTION MUST BE REVERSED BECAUSE THE COURT ERRED IN DETERMINING THAT THE LEGISLATURE INTENDED THE REFUSAL STATUTE TO COVER THE WHOLLY PRIVATE PARKING GARAGE AT THE TROY TOWERS, WHICH SPECIFICALLY EXCLUDES VISITORS AND TRADESMEN.
There is a significant difference in the language of the statute dealing with driving while intoxicated, N.J.S.A. 39:4-50, and the refusal statute, N.J.S.A. 39:4-50.2. The former speaks simply of operating a motor vehicle while under the influence of certain substances. The latter, however, provides in pertinent part that any individual "who operates a motor vehicle on any public road, street or highway or quasi-public area in this State" is deemed to have consented to give breath samples to an officer "who has reasonable grounds to believe" that the individual has been driving while intoxicated. N.J.S.A. 39:4-50.2(a). Under N.J.S.A. 39:4-50, it is immaterial where an individual operates a motor vehicle if intoxicated; the fact of operation constitutes the offense. Under N.J.S.A. 39:4-50.2, however, the offending conduct must have occurred on a "public road, street or highway or quasi-public area."
*970 Defendant argues that his conviction cannot stand because there was no proof he operated his car on a public road, street or highway, and the parking garage, restricted to use by the building's residents and their guests, is not a quasi-public area. The State argues that the determination by the municipal court judge and the Law Division judge that the garage was a quasi-public area is a factual finding to which we must defer under State v. Locurto, 157 N.J. 463, 470-71, 724 A.2d 234 (1999). We cannot agree with this argument; in our view, the decision whether the area is quasi-public is a conclusion of law, made on the basis of the stipulated facts. Our review of legal conclusions is plenary, with no presumption of correctness. Toll Bros., Inc. v. Twp. of W. Windsor, 173 N.J. 502, 549, 803 A.2d 53 (2002); Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995). We agree, nonetheless, that defendant's conviction should be affirmed because we are satisfied that this parking garage can fairly be termed a "quasi-public area" for purposes of the refusal statute.
The trial court approached the question by analyzing the underlying purposes of N.J.S.A. 39:4-50 and N.J.S.A. 39:4-50.2 and concluding that both were directed at protecting the safety of others. In its view, the three hundred plus residents of Troy Towers were as entitled to protection against an intoxicated driver as any driver proceeding down a public street. We do not entirely subscribe to this analysis, for it has the potential to eliminate entirely the distinction in language selected by the Legislature when it enacted these two separate statutes.
We focus, rather, on the nature of the structure itself and its uses and defendant's relationship to it. There is some indication that N.J.S.A. 39:4-50.2 was drafted to include the concept of a "quasi-public area" because of concerns expressed at the time of its enactment that it might run afoul of constitutional principles if the operator of a vehicle on wholly private property were deemed to have consented to provide breath samples. State v. Garbin, 325 N.J.Super. 521, 530-31, 739 A.2d 1016 (App.Div.1999), certif. denied, 164 N.J. 560, 753 A.2d 1153 (2000). This reflects the principle that one of the hallmarks of wholly private property is the ability of the owner to control who may have access to it and use of it. Bubis v. Kassin, 404 N.J.Super. 105, 960 A.2d 779 (App.Div.2008) (holding that owner of upland sand area not required to permit plaintiff to have use of that area).
Here, defendant did not own the garage and had no power to control who had access to it. The most that defendant had was the right to park his car in a designated slot. He had no ability to determine the terms under which other residents of this complex used the garage or where they parked their vehicles. He had no ability to reserve any portion of the structure for his own use or that of his guests; nor could he bar the guests of other residents from parking in accordance with the governing regulations. Although the parking garage was not available to the general public, it was available for all of the residents of Troy Towers to use on an equal basis in accordance with the governing regulations. This garage may have been private vis-à-vis the public at large; it was not private, however, vis-à-vis defendant and the other tenants of Troy Towers, all of whom had the right to share in its use. In light of this shared use, we conclude it is appropriately characterized as quasi-public for purposes of the refusal statute. We thus affirm defendant's conviction under N.J.S.A. 39:4-50.2.
We turn now to the State's cross-appeal. At the conclusion of the proceedings in municipal court in July 2007, after *971 the municipal court judge concluded that defendant was guilty under N.J.S.A. 39:4-50.2, he turned to the question of sentencing and said to defendant's counsel, "This is his first offense, correct?" to which the attorney responded, "I believe so. Yes, Your Honor. Yes." The municipal court judge then sentenced defendant accordingly. The Law Division judge imposed the same sentence following the trial de novo.
The State has submitted to us the transcript of an earlier proceeding, in November 2006, in Weehawken municipal court, at which defendant pled guilty to driving while intoxicated. It has also submitted a copy of a summons issued in March 2007, one month prior to the subject incident, for refusal to submit to breath testing, and a copy of the judgment of conviction for this offense following a trial de novo in the Law Division. It is patent that defendant was not entitled to be sentenced as a first offender and that his sentence is illegal. We, therefore, remand this matter to the municipal court for purposes of re-sentencing.
In the course of reviewing this cross-appeal, we have noted that when defendant pled guilty in Weehawken municipal court to driving while intoxicated in November 2006, he was represented by the same attorney who assured the Union City municipal court judge in August 2007 that the conviction for refusal represented defendant's first offense. We are compelled to refer this matter for further proceedings to determine whether the attorney's statement was a result of ignorance or was a violation of his duty of candor to the court.
Defendant's conviction is affirmed. As to the cross-appeal, defendant's sentence is reversed, and the matter is remanded to the municipal court for re-sentencing.