J-A01007-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RANDOLPH SANDERS | : | |
| | : | |
| Appellant | : | No. 2508 EDA 2017 |

Appeal from the Judgment of Sentence March 6, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0001750-2015

BEFORE:  OTT, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY OTT, J.:                    **FILED JUNE 14, 2019**

Randolph Sanders appeals from the judgment of sentence imposed March 6, 2017, in the Philadelphia County Court of Common Pleas, made final by the denial of post-sentence motions on July 10, 2017.  Prior to sentencing, a jury convicted Sanders of first-degree murder, carrying a firearm without a license, carrying a firearm on a public street or public property in Philadelphia, and possessing an instrument of crime ("PIC").[1]  The court imposed the mandatory sentence of life imprisonment for the murder charge, with a consecutive aggregate term of 8½ to 17 years in prison on the remaining charges.  On appeal, Sanders claims the court erred in failing to grant a mistrial after the prosecutor made unfair and extremely prejudicial remarks

---

[1] **See** 18 Pa.C.S. §§ 2502(a), 6106(a)(1), 6108, and 907(a), respectively.

during closing arguments. *See* Sanders' Brief at 4. For the reasons below, we affirm the judgment of sentence.

The facts are as follows:

> The victim, Kim Jones, was the director of the Families and School Together ("FAST") program at Turning Points Agency, where [Sanders] worked as an assistant director. On January 12, 2015, Ms. Jones informed [Sanders] that she planned to tell DHS at a meeting the following day that [Sanders] was responsible for the mismanagement of $35,000 to $40,000 of funds from one of Turning Points Agency's contracts. Having been told this, [Sanders] decided that he had to stop Jones from going to that meeting. The following morning, on January 13, 2015, [Sanders] disguised himself with a hat and hoodie in an attempt to hide his identity from Ms. Jones and from any video cameras. He then drove his truck to the subway, took the subway to Ms. Jones's residence, and then hid behind some cars across the street. Once [Sanders] saw Ms. Jones walking to a bus stop at 1200 Jefferson Street in Philadelphia, he walked up behind her and shot her in the back of the head with a silver revolver. [Sanders] then took the subway to where he had parked his truck and drove away. [Sanders] then pulled over at a McDonald's on Henry Avenue and threw the gun in a dumpster. He then burned the gloves he was wearing, the bag that he was carrying, and the clothes that he was wearing near the dumpster and placed all of these items, including the sneakers he was wearing, in a nearby clothing drop.

Trial Court Opinion, 10/17/2017, at 2-3 (record citations omitted).

Sanders was charged with numerous offenses related to the incident. On March 1, 2017, the matter proceeded before a jury. Pertinent to this appeal, video surveillance footage of the shooting and the shooter's travels to and from the crime scene were admitted into evidence. *See* N.T., 3/2/2017,

at 40-95.[2]  On March 6, 2017, a jury convicted him of the above-mentioned crimes.  Immediately following the trial, the court imposed the mandatory sentence of life in prison for the murder conviction,[3] with a consecutive aggregate term of 8½ to 17 years' imprisonment on the remaining charges. Sanders filed post-sentence motions, which the court denied on July 10, 2017.[4]  This appeal followed.[5]

In his sole argument on appeal, Sanders contends:

> [T]he trial court erred in not granting a mistrial after defense counsel objected to the prosecutor's unfair and extremely prejudicial remarks during closing argument that the defense

_____

[2]  We also note Sanders initially confessed to police that he shot Jones.  **See** N.T., 3/2/2017, at 160-166.  However, at trial, he took the stand and denied he was the shooter.  **See** N.T., 3/3/2017, at 83.

[3]  It merits mention that Sanders' sentence was not unconstitutional under **Alleyne v. United States**, 570 U.S. 99 (2013), because it was based on his conviction and not on an "aggravating fact."  **See Commonwealth v. Resto**, 179 A.3d 18 (Pa. 2018) (holding mandatory minimum sentencing provision that does not require proof of any aggravating fact does not violate the Sixth Amendment pursuant to **Alleyne**); **see also** 18 Pa.C.S. § 1102(a) ("[A] person who has been convicted of a murder of the first degree ... shall be sentenced to death or to a term of life imprisonment in accordance with 42 Pa.C.S. § 9711[.]").

[4]  On March 15, 2017, trial counsel filed a motion to withdraw as counsel, which the court granted.  New counsel was appointed to represent Sanders on appeal.

[5]  On August 8, 2017, the trial court ordered Sanders to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Sanders filed a concise statement on August 28, 2017, and a supplemental statement on September 12, 2017.  The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on October 17, 2017.

character's testimony was worthless because they knew [Sanders] was in the murder video and were never asked by defense counsel if, by seeing the video evidence, that [Sanders] performed a murder.

Sanders' Brief at 4. Moreover, he states:

[T]he prosecutor never asked any of the character witnesses about the video. He merely argued they saw it during trial and had to know who appeared in the video. Therefore, according to the prosecutor, these witnesses were not credible and they testified to worthless character testimony. An argument such as this was baseless. In fact, the argument was outside the scope of testimony for which these witnesses were called, and thus, an improper reference to [Sanders'] shift of burden to present evidence of who was in the video. Further, the prosecutor did not cross-examine the witnesses on credibility or basis of knowledge. The prosecutor then argued in closing how the witnesses watched the video during trial, and how the witnesses could not know the individual featured in the video, but never actually asked the witnesses. There is no other conclusion other than to say this argument was improper and prejudicial, depriving [Sanders] of a fair trial.

A defense character witness cannot be cross-examined about a defendant's criminal misconduct which has not resulted in a conviction. *Commmonwealth v. Morgan*, 739 A.2d 1022 (Pa. 1999); *United States v. Kellogg*, 510 F.3d 188, 196 (3rd Cir. 2007). More specifically, a reputation witness may not be asked whether his or her testimony would change if he or she knew that the defendant had committed the acts for which the defendant is being tried. This question has no probative value, assumes facts that are the subject of the litigation, and destroys the presumption of innocence. Reputation witnesses can be properly questioned as to how the witness's belief in reputation is influenced by the witness's personal knowledge of the defendant's illegal behavior. *Commonwealth v. Adams*, 626 A.2d 1231, 1234 (Pa. Super. 1993). However, the reputation witnesses at [Sanders'] trial were not eyewitnesses to the murder. The argument by the prosecutor was not based on evidence, and by law, could not have been.

Sanders' Brief at 10-11.

- 4 -

We are guided by the following:

> We review the trial court's decision to deny a mistrial for an abuse of discretion.  A mistrial is necessary only when the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict.  A mistrial is inappropriate where cautionary instructions are sufficient to overcome any potential prejudice.

*Commonwealth v. Bedford*, 50 A.3d 707, 712-713 (Pa. Super. 2012)

(citations and internal quotation marks omitted), *appeal denied*, 57 A.3d 65

(Pa. 2012).  Moreover,

> we note that in reviewing a claim of improper prosecutorial comments, our standard of review "is whether the trial court abused its discretion."  *Commonwealth v. Hall*, 549 Pa. 269, 701 A.2d 190, 198 (1997).  Additionally,

> > [W]ith specific reference to a claim of prosecutorial misconduct in a closing statement, it is well settled that any challenged prosecutorial comment must not be viewed in isolation, but rather must be considered in the context in which it was offered.  Our review of a prosecutor's comment and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial.  Thus, it is well settled that statements made by the prosecutor to the jury during closing argument will not form the basis for granting a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict.  The appellate courts have recognized that not every unwise remark by an attorney amounts to misconduct or warrants the grant of a new trial.  Additionally, like the defense, the prosecution is accorded reasonable latitude, may employ oratorical flair in arguing its version of the case to the jury, and may advance arguments supported by the evidence or use inferences that can reasonably be derived therefrom.  Moreover, the

> prosecutor is permitted to fairly respond to points made in the defense's closing, and therefore, a proper examination of a prosecutor's comments in closing requires review of the arguments advanced by the defense in summation.
>
> *Commonwealth v. Jaynes*, 2016 PA Super 55, 135 A.3d 606, 615 (Pa. Super. 2016) (quotation marks, quotation, and citations omitted).

*Commonwealth v. Jones*, 191 A.3d 830, 835-836 (Pa. Super. 2018). "A mistrial is not necessary where cautionary instructions are adequate to overcome prejudice." *Commonwealth v. Chamberlain*, 30 A.3d 381, 422 (Pa. 2011). "[T]he jury is presumed to follow the court's instructions." *Commonwealth v. Jemison*, 98 A.3d 1254, 1263 (Pa. 2014).

Turning to the present matter, Sanders points to the following excerpt from the prosecutor's closing argument:

> The defense says, well, the man has his reputation, right? The defense presented reputation or character witnesses that say, hey, I've talked to people in the community, my friends and family, which, of course, are also his friends and family, because they were all relatives and long-time friends, right, and he has good reputation. Okay. Who doesn't have somebody that will stand by them no matter how bad an act? I'd love to think that my mother would also sit behind me no matter what I did, no matter how bad I did it.
>
> But the Judge is going to tell you something about that reputation evidence. He's going to tell you that you don't consider that reputation evidence alone in a vacuum, you don't disregard the evidence, the circumstantial evidence, that points directly to the defendant and his identity as the person who perpetrated the killing of Kim Jones. You don't ignore the sneakers, the dent in the car, the missing trailer hitch in the video. You consider reputation evidence along with all of the other evidence.

So what kind of weight does that reputation evidence deserve? Think about that. I was listening to his mother talk about, you know, she knows people and I've talked to people in the community, and I hope my mother would say the same thing, and I'm sure everybody has somebody that would say that, but as I was doing that, I was thinking to myself about his video with Kim Jones walking along the street and it occurred to me, I never met Kim Jones, I see Kim Jones walking along in that video to the bus stop, I don't know it's Kim Jones. I know it's Kim Jones because she was killed right there, and I know the responding officers who came and got her ID out of her bag and were there when the medics came and pronounced her dead. I know because her family came and identified her at the Medical Examiner's Office. That's how I know it's Kim Jones. But as her wife of 25, 30 years sits there and watches that video, how long do you think it takes her to know that's Kim Jones walking, even without being able to see her face? A second? Maybe. Right?

And then it occurred to me, you know, the defendant's mother, the defendant's wife, the defendant's father, all of the people that he says, that the defense presented, and says we'll vouch for him, remember, I agreed, yeah, they're going to say the same thing that his mom said. I'm sure they are, okay. But it occurred to me as they sat with us on Thursday all morning, half the day watching this video, watching the defendant walk up the street, watching him walk - I put the map down - but all the way from the subway, all the way through the thing, I mean, he's got a pretty distinct walk. How long did they have to watch that before they knew it was the defendant? A minute? Maybe. A second? Probably. Right? A guy you've raised since he was a kid, since he was born, a man that you're married to.

So think about it, what weight do I give that evidence? Because the defense has no obligation to present evidence, and you can't hold it against him if they don't present evidence. But if they're going to call a witness, you, certainly, can weigh what they asked that witness. I mean they called this witness, and the only thing they ask after they've been sitting here the same as you and me watching this video, you know they know, and yet, the only question they ask is, what do people say about him in the community? That's how worthless that evidence is. They know.

They knew as they watched it in the gallery, and they knew when they sat up here.

N.T., 3/6/2017, at 67-70.

The trial court found the following:

> Here, the prosecutor noted in his closing argument that none of the defense character witnesses, all of whom knew [Sanders] well, including [Sanders'] mother, father, and wife, were asked whether the shooter depicted in the video was [Sanders], even though the shooter had a distinct walk. The prosecutor explicitly followed this observation with a statement that "the defense has no obligation to present evidence, and you can't hold it against him if they don't present evidence." However, the prosecutor contended that having elected to present evidence, the fact that [counsel for Sanders] did not ask intimate family members whether the shooter in the video appeared to be [Sanders] undermined the defense argument that [Sanders] was not that shooter.

> The prosecutor's argument was not improper. When a defendant elects to present evidence, and puts on a defense, the prosecutor is permitted to challenge the credibility of the defense evidence, including the absence of any corroborating evidence that could have been presented. Such arguments are proper advocacy and not an improper attempt to shift the burden of proof to the defendant. *See Commonwealth v. Thomas*, 54 A.3d 332, 339-340 (Pa. 2012). Moreover, the Court thoroughly instructed the jury regarding the proper burden of proof in its final charge to the jury.

Trial Court Opinion, 10/17/2017, at 7-8 (record citations omitted).

We are initially troubled by the following statement made by the prosecutor:

> But if they're going to call a witness, you, certainly, can weigh what they asked that witness. I mean they called this witness, and the only thing they ask after they've been sitting here the same as you and me watching this video, you know they know,

- 8 -

and yet, the only question they ask is, what do people say about him in the community? That's how worthless that evidence is.

N.T., 3/6/2017, at 70. Such a comment flies in the face of well-settled case law that reputation witnesses cannot be questioned about topics concerning information outside of a defendant's character or character trait – here, identifying the perpetrator in the surveillance video. **See i.e.**, **Commonwealth v. Rashid**, 160 A.3d 838 (Pa. Super. 2017); Pa.R.E. 405. A statement that a reputation witness's testimony is worthless is also misleading.

Nevertheless, while we find this one comment objectionable, we have reviewed the prosecutor's closing argument in *toto* and we agree with the trial court's analysis and its instruction to the jury. These three witnesses, Sanders' parents and his wife, were very familiar with Sanders and because he elected to present evidence and put on a defense, the prosecutor was "permitted to challenge the credibility of the defense evidence, including the absence of any corroborating evidence that could have been presented. Such arguments are proper advocacy and not an improper attempt to shift the burden of proof to the defendant." Trial Court Opinion, 10/17/2017, at 8. **See Commonwealth v. Miller**, 172 A.3d 632, 644 (Pa. Super. 2017) ("It is well settled that the prosecutor may fairly respond to points made in the defense closing.") (quotation omitted); **Commonwealth v. Passarelli**, 789 A.2d 708, 713 (Pa. Super. 2001) ("Furthermore, our law presumes that juries

follow the trial court's instructions as to the applicable law. Thus, any prejudicial effect from the prosecutor's statement was cured by the trial court's general cautionary instruction to the jury.") (citation omitted). Because we discern no abuse of discretion by the trial court, Sanders' prosecutorial misconduct claim fails. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge Stabile joins this memorandum.

Judge McLaughlin concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/14/19