COMMONWEALTH vs. JAMES H. BATES, JR.

No. 87-426.

Essex. September 18, 1989. - January 12, 1990.

Present: DREBEN, CUTTER, & SMITH, JJ.

Constitutional Law, Search and seizure. Search and Seizure, Emergency.

At the hearing on a motion to suppress evidence seized after a warrantless police entry into an apartment the prosecution did not sustain its burden of showing that the police had reasonable grounds to believe there was an emergency that would obviate the need for a warrant. [219-222]

COMPLAINT received and sworn to in the Newburyport Division of the District Court Department on August 16, 1985.

On transfer to the jury session of the Haverhill Division a pretrial motion to suppress evidence was heard by *William H. Sullivan*, J., and the case was heard by *John B. Murphy*, J.

*Susan B. Persky* for the defendant.

*Robert J. Bender*, Assistant District Attorney, for the Commonwealth.

DREBEN, J. This appeal presents the question whether there was an emergency justifying officers of the Newburyport police to enter a missing woman's apartment without a warrant. Upon entry they found the defendant lying intoxicated on a couch, his body covering a handgun and some ammunition. They also found another gun in a closet of a different room of the apartment. In his appeal from two convictions of unlawful possession of a firearm (one for each gun) and from his conviction of unlawful possession of ammunition, the defendant claims the motion judge erred in denying his motion to suppress the guns and ammunition. He also appeals from the denial of his motion for a new trial based on allegations of ineffective assistance of counsel.

In denying the motion to suppress, the judge made no find-ings. Since the evidence at the hearing on the motion to sup-press, even in its light most favorable to the Commonwealth, does not, in our view, permit a conclusion that the Common-wealth sustained its burden of showing that the search fell within the "emergency exception" to the warrant require-ment of the Fourth Amendment, see *Mincey* v. *Arizona*, 437 U.S. 385, 392 (1978), no useful purpose would be served by remanding the case for additional findings. See *Common-wealth* v. *Hosey*, 368 Mass. 571, 574 n.1 (1975). We set aside the convictions.[1]

We turn to the evidence. At the hearing on the motion to suppress, the two police officers from Newburyport who made the warrantless entry testified to what was known to the police at that time. Officer Donald L. Ray was on the midnight to 8:00 A.M. shift on April 16, 1985. At approxi-mately 12:20 A.M. he was told by his police dispatcher to try to locate a woman who was reported missing or kidnapped from a restaurant. The woman had been out to dinner in Hampton, New Hampshire, with a James Bates (the defend-ant), had left the table to go to the ladies' room, and had not returned. Bates had called the Hampton police who, in turn, informed the Newburyport police that the woman, a resident of Newburyport, was missing.

Accompanied by Officer Harrison Whitney, Officer Ray went to the missing woman's apartment complex, rang the buzzer to her apartment, and, receiving no answer, rang the bell of the building manager's apartment. The manager let the officers into the complex. Officer Ray knocked twice on the door of the woman's apartment. He heard a television set. The volume seemed to increase between the first knock and the second knock. Officer Ray then tried the door, found it to be unlocked and entered the apartment. The defendant

---

[1]The Commonwealth does not argue that the defendant, who claims he was living in the apartment with the missing woman, lacks standing to challenge the search. Contrast *Commonwealth* v. *Mora*, 402 Mass. 262, 265-267 (1988).

was lying intoxicated on a couch on top of a handgun and some ammunition.

Both Officers Ray and Whitney testified that, although they did not know it at the time they entered the apartment, the call from the Hampton, New Hampshire, police had been made to the Newburyport police at about 9:00 P.M., on April 15, 1985. Three hours and twenty minutes later Officers Ray and Whitney were sent into the apartment.

Unless this entry fell within "a well defined exception" to the warrant requirement of the Fourth Amendment, it was a search "conducted outside the judicial process without prior approval by judge or magistrate" and was "per se unreasonable." *Thompson* v. *Louisiana*, 469 U.S. 17, 20 (1984). The exception relied on by the Commonwealth is the "emergency" exception[2] which applies when the purpose of the police entry is not to gather evidence of criminal activity but rather, because of an emergency, to respond to an immediate need for assistance for the protection of life or property. "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *Mincey* v. *Arizona*, 437 U.S. at 392, quoting from *Wayne* v. *United States*, 318 F.2d 205, 212 (D.C. Cir.), cert. denied, 375 U.S. 860 (1963). *Commonwealth* v. *Kingsbury*, 7 Mass. App. Ct. 51, 54, *S.C.*, 378 Mass. 751 (1979). *United States* v. *Barone*, 330 F.2d 543, 545 (2d Cir.), cert. denied, 377 U.S. 1004 (1964). *People* v. *Boyd*, 123 Misc. 2d 634, 641 (N.Y. Sup. Ct. 1984), aff'd, 127 A.D.2d 1013 (N.Y. App. Div. 1987). *Duquette* v. *Godbout*, 471 A.2d 1359, 1362 (R.I. 1984). See generally 2 LaFave, Search and Seizure § 6.6(a) (2d ed. 1987 & Supp. 1989); Mascolo, The Emergency Doctrine Exception to the Warrant Requirement Under the Fourth Amendment, 22 Buffalo L. Rev. 419, 433-437 (1973); Model Code of Pre-Arraignment Procedure § SS 260.5 (1975). For the exception to apply, the burden of proof is on the Commonwealth to

---

[2]Sometimes called the "community caretaker exception" when the public safety is involved. See *United States* v. *Lott*, 870 F.2d 778, 781-782 (1st Cir. 1989).

show that the warrantless entry falls within the exception and that there were reasonable grounds for the Newburyport police to believe (an objective standard) that an emergency existed. *Root* v. *Gauper*, 438 F.2d 361, 364 (8th Cir. 1971). *People* v. *Mitchell*, 39 N.Y.2d 173, 177, cert. denied, 426 U.S. 953 (1976). 2 LaFave, Search & Seizure § 6.6(a), at 698.

Thus, in cases involving missing persons, the showing of a true emergency is required. See, e.g., *People* v. *Smith*, 7 Cal. 3d 282, 286 (1972) (six year old child found crying outside mother's apartment did not establish emergency in absence of evidence to assume mother was incapacitated inside); *People* v. *Clayton*, 34 Ill. App. 3d 376, 379 (1975) (emergency found where woman had been missing six hours, defendant had history of harassing her, including holding her at gunpoint); *People* v. *Mitchell*, 39 N.Y.2d at 177 (emergency found where highly probable that missing hotel employee was in hotel and some grave misfortune had befallen her); *State* v. *Beede*, 119 N.H. 620, 627-629 (1979), cert. denied, 445 U.S. 967 (1980) (no emergency found where police waited many hours before conducting search — emergency can disappear with the passage of time); *Commonwealth* v. *Maxwell*, 505 Pa. 152, 164, cert. denied, 469 U.S. 971 (1984) (police had reason to believe that missing person was in the defendant's house and in need of immediate aid where person's last whereabouts were traced to defendant's house, his credit card had been used by someone other than himself, and where defendant's daughter had told the police that an unfamiliar large trash bag was in the basement and that she had found unidentified shoes and a briefcase in the house); *Duquette* v. *Godbout*, 471 A.2d at 1361 (emergency found where woman shouting and banging on door of apartment believing her sixteen year old daughter was inside and screaming).

We recognize that the determination of what is constitutionally sufficient to justify a search has been held to be "less stringent" where the police are looking for missing persons rather than engaging in a criminal search for evidence. *Du-*

*quette* v. *Godbout*, 471 A.2d at 1362. *State* v. *Beede*, 119 N.H. at 626-627. See generally Bacigal, The Emergency Exception to the Fourth Amendment, 9 U. Rich. L. Rev. 249, 268 (1975). Indeed, we have no doubt that the circumstances described by officers Ray and Whitney made it appropriate to look into the apartment to see if there was evidence leading to the missing woman. "But the Fourth Amendment requires that this judgment . . . be made in the first instance by a neutral magistrate." *Mincey* v. *Arizona*, 437 U.S. at 395. "We cannot be true to that constitutional requirement and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative." *McDonald* v. *United States*, 335 U.S. 451, 455-456 (1948). *Thompson* v. *Louisiana*, 469 U.S. at 20.

It is apparent from the delay in dispatching Officers Ray and Whitney to the apartment that the Newburyport police department did not regard the 9:00 P.M. telephone call as describing an emergency. This time lag, in the absence of additional facts explaining why it was "impracticable for the police to obtain a warrant," *Commonwealth* v. *Forde*, 367 Mass. 798, 800 (1975), precludes a finding of an emergency justifying the warrantless entry into the apartment. See, e.g., *State* v. *Beede*, 119 N.H. at 627-629.

No such additional facts were adduced at the hearing on the motion to suppress.[3] The evidence that the television set

---

[3]The defendant submitted affidavits with his motion for a new trial. One was from Officer Hoxie of the Hampton, New Hampshire, police which incorporated the latter's police report. That document contained information favorable to the Commonwealth, including a statement that Officer Hoxie called the Newburyport police at 12:20 A.M. Because of concerns about the defendant's stability, Officer Hoxie in his second call requested that police be dispatched to the missing woman's apartment. The Commonwealth, in a footnote in its brief, refers to this material but does not claim that the second call from New Hampshire occasioned or preceded the dispatch of Officers Ray and Whitney to the apartment. At the hearing on the motion to suppress the only New Hampshire telephone call mentioned was the one received by the Newburyport police at 9:00 P.M.

In the absence of such a claim by the Commonwealth (the party having the burden to show that the emergency exception is applicable), we need not consider whether, if at the hearing on the motion for a new trial there

was on or raised in volume does not, without more, obviate the need for a warrant. See *Horack* v. *Superior Ct.*, 3 Cal. 3d 720, 723, 726 (1970). That Officers Ray and Whitney were unaware that the call from New Hampshire had come in earlier is also of no consequence. Cf. *Commonwealth* v. *Gullick*, 386 Mass. 278, 283 (1982). On this record, the entry was not shown to be within the emergency exception to the warrant requirement.

Since the convictions were based entirely on the improperly seized evidence, and it does not appear that the Commonwealth has any other evidence to prove the defendant guilty, the judgments are reversed, the verdicts are set aside, and new judgments are to be entered for the defendant.[4]

*So ordered.*

had been evidence that the second call precipitated the entry, there should be a remand for a second evidentiary hearing on the motion to suppress to determine whether the police reasonably believed an emergency then existed. See *Commonwealth* v. *Howard*, 4 Mass. App. Ct. 476, 480-482 (1976).

[4]Because of our conclusion that the judgments must be reversed, we need not reach the defendant's claim of ineffective assistance of counsel. That assertion was grounded on counsel's alleged failure to explore a defense that the defendant qualified for an exception for possession of illegal firearms under G. L. c. 140, § 129C(j), because he claimed he was a new resident of Massachusetts, that is, he had resided in the Commonwealth less than sixty days. In this connection, it should be noted that there were conflicting affidavits and reports as to the defendant's place of residence, and the motion judge was not obliged to accord credence to the defendant's affidavit.