23 A.3d 416 (2011)
421 N.J. Super. 180
STATE of New Jersey, Plaintiff-Respondent,
v.
Jeffrey WITCZAK, Defendant-Appellant.
Docket No. A-2735-10T2
Superior Court of New Jersey, Appellate Division.
Argued February 16, 2011.
Decided April 12, 2011.
*419 David R. Meiswinkle, Designated Counsel, argued the cause for appellant (Yvonne Smith Segars, Public Defender, attorney; Mr. Meiswinkle, on the brief).
Brian D. Gillet, Assistant Prosecutor, argued the cause for respondent (Bruce J. Kaplan, Middlesex County Prosecutor, attorney; Simon Louis Rosenbach, Assistant Prosecutor, on the brief).
Before Judges FISHER, SAPP-PETERSON and FASCIALE.
The opinion of the court was delivered by
FASCIALE, J.S.C. (temporarily assigned).
We review an interlocutory order denying defendant's motion to suppress a handgun seized from his residence. The primary question presented is whether the community caretaker exception enunciated in Cady v. Dombrowski[1] applies to a warrantless search in the home. Defendant contends that the motion judge erred by applying the exception, and urges us to follow the rationale expressed in Ray v. Township of Warren,[2] which held that the exception does not extend to searches of homes. We decline to follow Ray and continue to apply New Jersey precedent which permits the exception in the home context on a case-by-case, fact-sensitive basis. We reverse, however, because no exigencies existed for the warrantless entry into defendant's home and the State has not demonstrated that the search was performed for the legitimate purpose of fulfilling a community caretaker responsibility.
On May 9, 2009, at approximately 9:43 p.m., Officer James Sztukowski received a call concerning an alleged aggravated assault involving a gun. He responded to the call and located the alleged victim a couple of blocks from the scene of the assault. The officer learned from the victim that she had worked in defendant's single-family home as a nurse and cared for defendant's very sick bedridden mother. She was unable to assist his mother from a bed on the first floor to the bathroom and yelled up to defendant on the third floor for assistance. Defendant did not respond, the victim walked upstairs to the door leading to the third floor, opened it, and observed defendant point a gun at her. The victim then ran out of the house and called the police. Officer Sztukowski remained with the victim, he testified that eight other officers responded to defendant's house, and he radioed to those officers what the victim told him.
Officer Anthony D'Onofrio was dispatched to the home. When he arrived, Officer D'Onofrio observed defendant through a third-floor window and requested that defendant exit the home. Defendant exited, raised his hands above his head, and stated there was a gun upstairs. Officer D'Onofrio arrested defendant, handcuffed him, and read to him his Miranda[3] warnings. Defendant's bedridden mother remained in the house on the first floor. No one else occupied the home.
*420 At this point, defendant was in custody, his mother occupied a bed on the first floor, approximately eight police cars and officers surrounded the house, and the victim was safe with Officer Sztukowski two blocks away. Officer D'Onofrio then entered defendant's house for the sole purpose of retrieving the gun on the third floor without obtaining a search warrant or consent from defendant or his mother. Officer D'Onofrio admitted that when he entered the house there was no emergency because the victim was safe.
Defendant was indicted and charged with third-degree aggravated assault, N.J.S.A. 2C:12-1b(4), and third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4a. The judge conducted the suppression hearing on August 11, 2010, listened to the testimony from Officers Sztukowski and D'Onofrio, and found both witnesses credible.[4] The State contended that the warrantless search was justified under the community caretaker and exigent circumstances exceptions to the warrant requirement. Defendant argued that the police entered the house to retrieve the gun, there was no exigency, and that no exception to the warrant requirement applied.
At the end of the hearing, the judge rendered an oral opinion and found that the State failed to demonstrate exigent circumstances justifying a warrantless entry into the home. He stated that "[there were] plenty of police officers there to secure the premises, to secure the mother, to make necessary telephone calls to secure [a] warrant." The judge then stated:
[I]s there [an] emergency aid exception, a community caretaking exception, because of the nature of the object sought by the police to be taken and removed? The answer is yes. . . . [U]nder [State v.] Frankel, 179 N.J. 586 [847 A.2d 561, cert. denied, 543 U.S. 876, 125 S.Ct. 108, 160 L.Ed.2d 128 (2004)] there is a nexus between the search and the emergency that has satisfied the facts that are placed forth on this record.
While I'm denying your motion to suppress[,] this is in the [c]ourt's mind a very close call and I invite you on disposition, encourage you on disposition[,] to have the [a]ppellate [c]ourt look at it.
On appeal, defendant argues that:
THE HANDGUN TAKEN FROM DEFENDANT'S BEDROOM WITHOUT A WARRANT OR CONSENT SHOULD BE SUPPRESSED AS THERE WAS NO EXIGENT CIRCUMSTANCE[] OR COMMUNITY CARETAKING EXCEPTION.
The facts upon which the motion judge relied in reaching his decision are not in dispute. Therefore, we address whether the motion judge properly applied the law to those facts. In that regard we owe no special deference to any legal conclusions reached from the established facts. See State v. Brown, 118 N.J. 595, 604, 573 A.2d 886 (1990) (holding that "[i]f the trial court acts under a misconception of the applicable law," we need not defer to its ruling). The trial court's application of the law is subject to plenary review on appeal. State v. Cleveland, 371 N.J.Super. 286, 295, 852 A.2d 1150 (App.Div.), certif. denied, 182 N.J. 148, 862 A.2d 57 (2004).
"Consistent with the Fourth Amendment to the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution, police officers must obtain a warrant . . . before searching a person's property, unless the search `falls within one of the recognized exceptions to *421 the warrant requirement.'" State v. DeLuca, 168 N.J. 626, 631, 775 A.2d 1284 (2001) (quoting State v. Cooke, 163 N.J. 657, 664, 751 A.2d 92 (2000)); see also State v. Robinson, 200 N.J. 1, 3, 974 A.2d 1057 (2009) ("[t]he warrant requirement embodied in both" the State and Federal Constitutions "limits the power of the sovereign to enter our homes and seize our persons or our effects"). A warrantless search is presumed invalid. State v. Pineiro, 181 N.J. 13, 19, 853 A.2d 887 (2004). The burden is placed on the State to prove that the search "`falls within one of the few well delineated exceptions to the warrant requirement.'" Ibid. (quoting State v. Maryland, 167 N.J. 471, 482, 771 A.2d 1220 (2001)).
We begin by addressing defendant's primary argument that the community caretaker exception enunciated in Cady does not apply to a warrantless entry into a home. Defendant urges us to follow the Third Circuit's decision expressed in Ray, that so held.
The United States Supreme Court first enunciated the community caretaker exception in Cady v. Dombrowski. Id. at 441, 93 S.Ct. at 2528, 37 L.Ed.2d at 714-15. In Cady, defendant, an off-duty Chicago police officer, was arrested for driving under the influence after he crashed his car in Wisconsin. Id. at 435-36, 93 S.Ct. at 2525, 37 L.Ed.2d at 711-12. The police towed his car to a private garage to prevent it from becoming a hazard on the road. Id. at 437, 93 S.Ct. at 2526, 37 L.Ed.2d at 712. Believing that Chicago police officers were required to carry their gun on them at all times, the police searched defendant and then his car for his gun "to protect the public from the possibility that a revolver would fall into untrained or perhaps malicious hands." Id. at 437, 443, 93 S.Ct. at 2525, 2529, 37 L.Ed.2d at 712, 716. The search of the car revealed incriminating evidence used to convict defendant of murder. Id. at 437-39, 93 S.Ct. at 2526-27, 37 L.Ed.2d at 712-13.
The Supreme Court of the United States stated that "local police officers . . . [perform] community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." Id. at 441, 93 S.Ct. at 2528, 37 L.Ed.2d at 714-15. By applying this doctrine, the Supreme Court permitted the warrantless search of the defendant's car to locate the gun for the purpose of protecting the public. Id. at 448, 93 S.Ct. at 2531, 37 L.Ed.2d at 718. Acknowledging that a distinction exists between the searches and seizures from houses and from automobiles, the Supreme Court explained:
Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute. [Id. at 441, 93 S.Ct. at 2528, 37 L.Ed.2d at 714-15.]
The reasonableness of a search depends on the facts and the Supreme Court explained that "`searches of cars that are *422 constantly movable may make the search of a car without a warrant a reasonable one although the result might be the opposite in a search of a home, a store, or other fixed piece of property.'" Id. at 440, 93 S.Ct. at 2527, 37 L.Ed.2d at 714 (emphasis added) (quoting Preston v. United States, 376 U.S. 364, 366-67, 84 S.Ct. 881, 883, 11 L.Ed.2d 777, 780 (1964)).
Recently, our Supreme Court used the exception to justify a warrantless search of a home. In State v. Bogan, 200 N.J. 61, 65, 975 A.2d 377 (2009), the police learned that a fourteen-year-old girl had been molested in the defendant's apartment. The police knocked on the apartment door and heard an adult male voice yell "who is it?" Id. at 66, 975 A.2d 377. A nervous twelve-year-old boy opened the door and stated that no one was home. Ibid. A telephone located immediately inside the apartment rang, the boy picked up the receiver, and informed the police that his father was on the phone. Id. at 67, 975 A.2d 377. The boy permitted the officer to speak to his father, the officer walked a few steps into the apartment and noticed the defendant in plain view fitting the description given earlier by the young girl. Ibid. In holding that "the warrantless entry of the . . . apartment under the community caretaker exception comported with both our federal and state constitutions," id. at 81, 975 A.2d 377, the Bogan Court "emphasiz[ed]. . . that the community caretaker responsibility must be a real one, and not a pretext to conduct an otherwise unlawful warrantless search." Id. at 77, 975 A.2d 377.
The Bogan Court stated:
In the case before us, the Appellate Division maintained that the community caretaking exception did not apply because "[t]he police presence on the scene was not `totally divorced' from their investigation of a potential crime." (Quoting Cady, supra, 413 U.S. at 441, 93 S.Ct. at 2528, 37 L.Ed.2d at 715). The real question, however, is not the circumstances that brought the police to the scene of 111 Russell Street, but whether the actual entry into the apartment was for the legitimate purpose of fulfilling a community caretaking responsibility. So long as the police had an independent basis for entering the apartment under the community caretaking exception that was not a pretext for carrying out an investigatory search, we find no bar under Cady or under our federal and state constitutions for the police actions in this case. We agree with the New Hampshire Supreme Court which held:
While the "divorce" between the community caretaking function and the role of the police in the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute must be total, . . . the absolute separation need only relate to a sound and independent basis for each role, and not to any requirement for exclusivity in terms of time or space.
[State v. D'Amour, 150 N.H. 122, 834 A.2d 214, 217 (2003).]
We also agree [with the New Hampshire Supreme Court] that "[t]o hold that the police can never legitimately engage in community caretaking activities merely because they are also involved in the detection, investigation, or acquisition of evidence concerning the violation of a criminal statute could lead to absurd results." Id. at 218 [834 A.2d 214]. We will not read Cady in a way that would handcuff police officers from fulfilling a clear community caretaking responsibility, particularly one that might prevent imminent harm to a child, merely because the officers are engaged in a concurrent criminal investigation. We emphasize, *423 however, that the community caretaking responsibility must be a real one, and not a pretext to conduct an otherwise unlawful warrantless search. [Bogan, supra, 200 N.J. at 77, 975 A.2d 377.]
In State v. Cassidy, 179 N.J. 150, 843 A.2d 1132 (2004), our Supreme Court endorsed the use of the community caretaker exception in the home. Cassidy involved the search of a home in the context of a domestic violence dispute. Id. at 153, 843 A.2d 1132. Incident to the issuance of a restraining order, the police searched the home and seized several weapons. Id. at 155-56, 843 A.2d 1132. In recognizing that a warrantless search of a home may be conducted under an emergency aid exception to the warrant requirement, the Court stated that "[t]he requirement of a warrant [for the search of a home] has been excused also under a `community caretaker doctrine.'" Id. at 161 n. 4, 843 A.2d 1132.
Importantly, Cassidy distinguishes between the community caretaker and the emergency aid exceptions to the warrant requirement. Ibid. The community caretaker exception asks whether the police are "engaged in `functions, [which are] totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a statute.'" Ibid. (quoting State v. Navarro, 310 N.J.Super. 104, 109, 708 A.2d 416 (App.Div.), certif. denied, 156 N.J. 382, 718 A.2d 1211 (1998)). The emergency aid exception focuses on "`(1) the existence of an emergency as viewed objectively, (2) a search not motivated by a desire to find evidence and (3) a nexus between the search and the emergency.'" Id. at 161, 843 A.2d 1132 (quoting State v. Scott, 231 N.J.Super. 258, 275, 555 A.2d 667 (App.Div.1989), reversed on dissent, 118 N.J. 406, 571 A.2d 1304 (1990)). Thus, the emergency aid exception is one aspect of the police's community caretaking functions, but "[t]he community caretaker exception . . . is an independent and broader exception to the Fourth Amendment[.]" State v. Deneui, 775 N.W.2d 221, 251-52 (S.D. 2009) (Meierhenry, J., dissenting), cert. denied, ___ U.S. ____, 130 S.Ct. 2072, 176 L.Ed.2d 422 (2010). These related, but separate exceptions, have been used interchangeably in the past by our courts and by other state courts.[5]
The Court of Appeals for the Third Circuit recently interpreted Cady to mean that the community caretaker exception does not apply in the home. Ray, supra, 626 F.3d at 170. Defendant urges that we reject any extension of the community *424 caretaker exception into the home as the Third Circuit did in Ray.
In Ray, defendant's wife went to pick up her young child at defendant's home for visitation. Id. at 171. Although she saw someone in the house and rang the doorbell several times, no one answered the door. Ibid. The police arrived at the scene and became concerned for the safety of the child after receiving no response from knocking on the doors and windows. Ibid. The police entered the home to check on the child's well-being. Ibid. In holding that the community caretaker exception is inapplicable to the home, the Court of Appeals for the Third Circuit explained that "[we] . . . interpret the Supreme Court's decision in Cady as being expressly based on the distinction between automobiles and homes for Fourth Amendment purposes." Id. at 177.
There is a split of authority among the federal courts of appeals concerning the applicability of the exception in the home context. The Third Circuit, in Ray, has joined the Courts of Appeals for the Seventh,[6] Ninth,[7] and Tenth Circuits[8] interpreting Cady not to permit the community caretaker exception to justify a warrantless search of a home. The Supreme Court of the United States has not yet resolved this disagreement among the courts of appeals. See Pinkard, supra, 785 N.W.2d at 598 (Supreme Court denied writ of certiorari after Wisconsin Supreme Court permitted community caretaker exception to apply to searches of homes and stated "[w]e note that there is no language in Cady . . . that limits an officer's community caretaking functions to incidents involving automobiles. We read Cady not as prohibiting officers from entering a residence without a warrant . . . but instead as counsel[ing] a cautious approach when the exception is invoked to justify law enforcement intrusion into a home.") (internal citations and quotation marks omitted); see also Wood v. Commonwealth, 27 Va.App. 21, 497 S.E.2d 484, 487 (1998) ("[T]he [United States] Supreme Court has yet to decide whether a situation might exist that would justify a warrantless intrusion into an individual's home under the `community caretaker' doctrine. . . ."). The Fifth,[9] Sixth[10] and Eighth[11] Circuits have relied on the community caretaker exception to permit warrantless entries into homes.
While we are not bound by lower federal court decisions involving either constitutional or statutory interpretation, we do give such decisions due respect in an attempt to create "judicial comity" and avoid forum shopping. Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 79-80, 577 A.2d 1239 (1990). We are not bound by lower federal courts because "state courts and the lower federal courts have the same responsibility and occupy the same position; there is parallelism but not paramountcy for both sets of courts are governed by the same reviewing authority of the Supreme Court." State v. Coleman, 46 N.J. 16, 36, 214 A.2d 393 (1965), cert. denied, 383 U.S. 950, 86 S.Ct. 1210, 16 L.Ed.2d 212 (1966). See also State v. One 1994 Ford Thunderbird, 349 N.J.Super. 352, 364, 793 A.2d 792 (App.Div.2002) *425 (holding that "[b]ecause there has never been a definitive statement by the [United States] Supreme Court clarifying [the] recognized ambiguity [in Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967)] . . . we are free to adopt our own view of its holding, unconstrained by opinions of federal courts of appeal.").
We are not free to determine whether Ray's declaration of the reach of the federal constitution should apply here. We are bound only by the Supreme Court of the United States, which, as we have noted, has not addressed the split in the views of the federal circuits, and our own Supreme Court, which has applied the community caretaker exception to warrantless searches of the home. So limited, we consider whether the community caretaker exception, as described by our Supreme Court, authorizes the warrantless search that occurred here. "[T]he community caretaking doctrine recognizes that the police are called on to perform dual roles." State v. Diloreto, 180 N.J. 264, 276, 850 A.2d 1226 (2004).
Law enforcement officers generally act pursuant to either law enforcement or community caretaking objectives. The difference between the two stems from the officers' underlying motives. The law enforcement function includes conduct that is designed to detect or solve a specific crime, such as making arrests, interrogating suspects, and searching for evidence. Community caretaking, on the other hand, is based on a service notion that police serve to ensure the safety and welfare of the citizenry at large.
[Ibid. (quoting John F. Decker, Emergency Circumstances, Police Responses, and Fourth Amendment Restrictions, 89 J.Crim. L. & Criminology 433, 445 (1999)).]
Generally, "the community caretaker doctrine . . . is based on a service notion that police serve to ensure the safety and welfare of the citizenry at large." Diloreto, supra, 180 N.J. at 276, 850 A.2d 1226 (internal citation and quotation marks omitted). The ultimate standard of the Fourth Amendment is one of reasonableness. Navarro, supra, 310 N.J.Super. at 109, 708 A.2d 416 (citing Cady, supra, 413 U.S. at 439, 93 S.Ct. at 2527, 37 L.Ed.2d at 713). New Jersey courts have applied the reasonableness standard when analyzing whether the community caretaker exception applies. "The question is . . . whether the[] actions [of the police], when viewed as a whole, were objectively reasonable," Bogan, supra, 200 N.J. at 81, 975 A.2d 377, and whether the entry is "for the legitimate purpose of fulfilling a community caretaker responsibility." Id. at 77, 975 A.2d 377. See Garbin, supra, 325 N.J.Super. at 525-27, 739 A.2d 1016 (warrantless search of garage reasonable when officers' observation of smoke emanating from it and the wheels of defendant's truck rapidly spinning provided a reasonable basis for concern that something was wrong either with the vehicle or the driver); Navarro, supra, 310 N.J.Super. at 109, 708 A.2d 416 (police acted reasonably in accompanying landlady while she retrieved a gun she had found in her tenant's room, after she told the police that there were several children living in the apartment, and she wanted to determine whether the gun was real or a toy); see also Scott, supra, 231 N.J.Super. at 276-77, 555 A.2d 667 (Judge Ashbey's dissent explained that community caretaker exception applied to a search of a home when it was objectively reasonable to determine police officer viewed himself as a "caretaker.").[12]
*426 From the decisions of our Supreme Court regarding the community caretaker exception in the home context, we extrapolate the following themes. First, the analysis employs an objective reasonableness standard, which is the touchstone of the Fourth Amendment. Second, for the exception to apply, the police must act to fulfill a genuine community caretaker responsibility. And third, there must be evidence of some form of exigency that compels the police to ensure the safety and wellbeing of the citizenry at large. In short, it must be determined whether the police were motivated by giving assistance or by investigating a crime in their initial entry into the home.
Here, we find the facts to be insufficient to establish as objectively reasonable the claimed exercise of the police caretaking function. Officer D'Onofrio arrested defendant and entered the home to retrieve the gun. When the officer walked into the home, it was surrounded by up to eight officers, defendant was in custody, the victim was safe two blocks away, and defendant's bedridden mother was three floors away from the location of the gun. Officer D'Onofrio did not enter the home to ensure the safety and welfare of the bedridden woman. Even though the officer knew that defendant's mother was in the house, he did not speak to her. Once defendant was in custody and the victim was safely secured, there no longer existed any emergency.[13] Under these facts, we are unable to say that the purported "community caretaker responsibility [was] a real one, and not a pretext to conduct an otherwise unlawful warrantless search." Bogan, supra, 200 N.J. at 77, 975 A.2d 377.
We agree with the motion judge that the State also failed to demonstrate exigent circumstances justifying a warrantless entry into his home. A predominant exception to the warrant requirement is for exigent circumstances. Cassidy, supra, 179 N.J. at 160, 843 A.2d 1132. Under this exception, "circumstances have been found to be exigent when they `preclude expenditure of the time necessary to obtain a warrant because of a probability that the suspect or the object of the search will disappear, or both.'" Ibid. (quoting State v. Smith, 129 N.J.Super. 430, 435, 324 A.2d 62 (App. Div.), certif. denied, 66 N.J. 327, 331 A.2d 27 (1974)). A court must perform a fact-sensitive analysis that includes:
"[t]he degree of urgency and the amount of time necessary to obtain a warrant; the reasonable belief that the evidence was about to be lost, destroyed, or removed from the scene; the severity or *427 seriousness of the offense involved; the possibility that a suspect is armed or dangerous; and the strength or weakness of the underlying probable cause determination."
[Cassidy, supra, 179 N.J. at 160-61, 843 A.2d 1132 (quoting DeLuca, supra, 168 N.J. at 632-33, 775 A.2d 1284).]
After defendant complied voluntarily with Officer D'Onofrio's request that he exit the house, it is undisputed that defendant's mother was the only occupant left. The judge found that "[t]here [are] no inferences that anyone else is in the home. There's not even a suspicion that anyone else was in the home." Once defendant was handcuffed and in custody, there was no risk that the gun would disappear, be destroyed or removed from the third floor.
Finally, although the State did not invoke the emergency aid exception to the warrant requirement, we address it because the motion judge applied it and it has been used to support the application of the community caretaking responsibility.[14] Under the emergency aid exception police officers may enter a home without a warrant if they reasonably believe that a person inside is in need of immediate assistance. Frankel, supra, 179 N.J. at 599, 847 A.2d 561. "The emergency aid doctrine is derived from the commonsense understanding that exigent circumstances may require public safety officials, such as the police, firefighters, or paramedics, to enter a dwelling without a warrant for the purpose of protecting or preserving life, or preventing serious injury." Id. at 598, 847 A.2d 561.
To demonstrate whether a warrantless search is justified, the State must show:
the public safety official must have an objectively reasonable basis to believe that an emergency requires that he provide immediate assistance to protect or preserve life, or prevent serious injury;[] his primary motivation for entry into the home must be to render assistance, not to find and seize evidence; and there must be a reasonable nexus between the emergency and the area or places to be searched.
[Id. at 600, 847 A.2d 561.]
Here, Officer D'Onofrio entered the home to retrieve the gun related to the alleged offense for which defendant had just been arrested. The officer did not need to provide immediate assistance to the mother. Thus, the entry into defendant's home is not justified as emergency aid.
Reversed and remanded. We do not retain jurisdiction.
NOTES
[1] 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).
[2] 626 F.3d 170 (3d Cir.2010). Ray was decided after the motion judge denied defendant's suppression motion.
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[4] Officer Sztukowski testified that eight officers and police cars appeared at defendant's home, and Officer D'Onofrio testified that four or five officers met him at the home.
[5] See State v. Stott, 171 N.J. 343, 361, 794 A.2d 120 (2002) (stating that for community caretaker exception to apply police must be totally divorced from their criminal investigation responsibilities but citing to cases and factual circumstances applying the emergency aid exception); State v. Garbin, 325 N.J.Super. 521, 525-27, 739 A.2d 1016 (App.Div.1999) (holding that community caretaker exception applied but citing and relying on cases discussing the emergency aid exception), certif. denied, 164 N.J. 560, 753 A.2d 1153 (2000); Commonwealth v. Bates, 28 Mass.App.Ct. 217, 548 N.E.2d 889, 891 n. 2 (1990) (explaining emergency aid exception is "[s]ometimes called the `community caretaker exception'"); see also State v. Pinkard, 327 Wis.2d 346, 785 N.W.2d 592, 600, n. 8, 600-01 (2010), (explaining the difference between the two exceptions and highlighting its importance since the United States Supreme Court has explicitly adopted the emergency aid exception to allow warrantless searches of homes but has not explicitly extended the community caretaker exception to homes), cert. denied, ___ U.S. ____, 131 S.Ct. 1001, 178 L.Ed.2d 834 (2011); Mincey v. Arizona, 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290, 300 (1978) (recognizing police officers have the right to make warrantless entries and searches into homes when they reasonably believe immediate aid is required).
[6] United States v. Pichany, 687 F.2d 204, 207 (7th Cir.1982).
[7] United States v. Erickson, 991 F.2d 529, 533 (9th Cir. 1993).
[8] United States v. Bute, 43 F.3d 531, 535 (10th Cir. 1994).
[9] United States v. York, 895 F.2d 1026, 1029-30 (5th Cir. 1990)
[10] United States v. Rohrig, 98 F.3d 1506, 1514-15 (6th Cir. 1996)
[11] United States v. Quezada, 448 F.3d 1005, 1008 (8th Cir.2006)
[12] Other states have also permitted warrantless searches of a home under the community caretaker exception. See Laney v. State, 76 S.W.3d 524, 527, 530 (Tex.App.2002) (holding that police lawfully entered defendant's residence to assist children after defendant admitted that the children were not his and that he had been arrested for indecency with a child previously); People v. Ray, 21 Cal.4th 464, 88 Cal.Rptr.2d 1, 981 P.2d 928, 931-32 (1999) (allowing warrantless entry of a home to check on the welfare of people who may be inside and to protect property after a call to police informed them of a home in shambles with its door open); State v. Alexander, 124 Md.App. 258, 721 A.2d 275, 277 (1998) (finding police lawfully entered home without a warrant upon observing open basement door and report that no one was home since their primary motivation was to render aid); State v. Angelos, 86 Wash.App. 253, 936 P.2d 52, 53-54 (1997) (finding police officer lawfully searched house to prevent three unattended children from accidentally ingesting cocaine under the medical emergency exception to the police's community caretaking functions after the mother overdosed and was taken to the hospital).
[13] The motion judge found that "[there were] plenty of police officers there to secure the premises, to secure the mother, [and] to make necessary telephone calls to secure [a] warrant."
[14] Ray suggested that the community caretaking responsibilities of the police might be considered as a factor in applying the emergency aid doctrine. Ray, supra, 626 F.3d at 177.