**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited.  R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3423-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

TYRAY R. BROWN, a/k/a
TYRAY BROWN, TYRELL
BROWN, TYRE BROWN and
RYRAY R,

    Defendant-Appellant.

_____

Submitted November 15, 2021 – Decided January 4, 2022

Before Judges Fasciale and Sumners.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 19-03-0498.

Joseph E. Karkora, Public Defender, attorney for appellant (Molly O'Donnell Meng, Assistant Deputy Public Defender, of counsel and on the brief).

Grace C. MacAulay, Camden County Acting Prosecutor, attorney for respondent (Rachel M. Lamb, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

On a sixty-degree December evening, Camden County police responded to an emergency call about an unconscious man, later identified as defendant, laying semi-conscious appearing to be under the influence of drugs in front of a Camden residence. Concerned about his well-being, the officers checked on his vital signs while waiting for emergency medical services (EMS) to arrive. When Sergeant Angel Nieves grabbed defendant to wake him up, he felt something hard in defendant's waistband, which turned out to be a handgun. Defendant was subsequently charged with second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1), and second-degree certain persons not to possess any weapons, N.J.S.A. 2C:39-7(b)(1). After his motion to suppress the handgun was denied by Judge Francisco Dominguez, defendant pled guilty to second-degree unlawful possession of a weapon and was sentenced to five years in prison with a one-year period of parole ineligibility.

In a one-point argument, defendant appeals arguing:

> THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS BECAUSE THE POLICE DID NOT HAVE THE REQUISITE REASONABLE SUSPICION TO FRISK [] DEFENDANT.

We are unpersuaded and affirm.

2

At the suppression hearing, the State had the burden to prove that the search of defendant's person and seizure of the handgun was not violative of our state and federal constitutions.  The State presented one witness, Nieves,[1] while defendant did not testify or produce any witnesses.  At the hearing's conclusion, Judge Dominguez issued an oral decision, finding Nieves's testimony credible, and determining that his search and seizure of the handgun was permissible under the community-caretaker exception and the Terry doctrine.[2]  Relying upon State v. Diloreto, 180 N.J. 264 (2004), the judge found:

> [Nieves] was not acting in an investigatory manner of a criminal matter, but rather . . . all of these events acting in concert gave rise to the officer's community[-]caretaking role.  Additionally, . . . the officer did not perform this function as a pretext for a criminal investigation. . . . [T]he officer in this case acted out of concern for . . . defendant's safety while [he] acknowledged that . . . he took steps to protect his safety, in addition to . . . defendant's. . . . [T]he police need not abandon their own safety while reasonably engaged in . . . community[-]caretaking activity.

Regarding the application of Terry, the judge reasoned Nieves and other officers at the scene "had authority to conduct the search because under the

---

[1]  At the time of his testimony, Nieves had been promoted to the position of lieutenant.

[2]  Terry v. Ohio, 392 U.S. 1 (1968).

circumstances . . . a reasonably prudent man . . . would be warranted in the belief that his safety or that of others may be in danger."  More specifically, the judge found that based on the totality of the circumstances, since the officers were unaware of the intoxicant defendant consumed; any objects he may have possession, "such as hypodermic needles or other objects[] that could potentially harm" someone when attempting to render aid to him; and "the unusual amount of clothing . . . [he] was wearing that could conceal a weapon," the officers were reasonable in their belief that their safety, and the safety of others, was in danger. The judge stressed that when Nieves initially touched defendant to wake him up, it was not for the purpose of a criminal investigation but was part of his community-caretaking function.  Thus, the judge ruled that "[i]t was within the course of conducting that community-caretaking function that [Nieves] first felt an object that he . . . believed may have been a weapon."[3]

To adjudicate this appeal, we are guided by the following well-known principles.  Under the Fourth Amendment of the United States Constitution and

---

[3] The State also argued that even if the search and seizure of the gun was not justified under the community-caretaking exception, the handgun should be found admissible under the inevitable discovery doctrine when defendant would have been searched before being transported to the hospital.  Because the judge found that the community-caretaking exception applied, he did not address the inevitable discovery argument.

A-3423-19

Article I, Paragraph 7 of the New Jersey Constitution, "[a] warrantless search is presumed invalid unless it falls within one of the recognized exceptions to the warrant requirement." State v. Cooke, 163 N.J. 657, 664 (2000) (citing State v. Alston, 88 N.J. 211, 230 (1981)). The same is true of the warrantless seizure of a person or property. Terry, 392 U.S. at 19-21 (seizure of a person); State v. Hempele, 120 N.J. 182, 216-17 (1990) (seizure of property). In Terry, the United States Supreme Court held that a police officer is authorized to detain an individual for a brief period, and to pat him down for the officer's safety, if that detention is "based on 'specific and articulable facts which, taken together with rational inferences from those facts,' give rise to a reasonable suspicion of criminal activity." State v. Rodriguez, 172 N.J. 117, 126 (2002) (quoting Terry, 392 U.S. at 21).

The community-caretaking doctrine, first enunciated by the Supreme Court in Cady v. Dombrowski, 413 U.S. 433 (1973), is an exception to the warrant requirement based on the awareness that police officers "often are called on to perform dual roles." State v. Diloreto, 180 N.J. 264, 276 (2004). "The . . . doctrine recognizes that police officers provide a wide range of social services outside of their traditional law enforcement and criminal investigatory roles." State v. Scriven, 226 N.J. 20, 38 (2016) (internal quotation marks and citations

omitted).  The doctrine provides an independent justification for intrusions into a citizen's liberty that would otherwise require a showing of probable cause or reasonable and articulable suspicion of criminal behavior.  Diloreto, 180 N.J. at 276.  Our Supreme Court has found that the community-caretaker role permits officers to "check on the welfare or safety of a citizen who appears in need of help on the roadway without securing a warrant or offending the Constitution." Scriven, 226 N.J. at 38.

The doctrine entails a fact-sensitive, two-part inquiry.  First, a court must ask whether the officer has reacted to an objectively reasonable community-concern.  Id. at 39 (stating that officers must have an "objectively reasonable basis" to stop a vehicle to provide aid or check a motorist's welfare).  That concern must serve as a distinct motivation for the officer's conduct, divorced from any desire to further a criminal investigation.  In other words, community-caretaking may not serve as a pretext for a warrantless intrusion into a citizen's liberty that does not satisfy another warrant exception.  State v. Bogan, 200 N.J. 61, 77 (2009).  However, the "divorce" between the two police functions "need only relate to a sound and independent basis for each role, and not to any requirement for exclusivity in terms of time or space."  Ibid.  (citation omitted).

A-3423-19

Second, the court must discern whether the actions taken by the officer pursuant to his community-caretaking remained within the limited scope justified by that function.  As with all police stops, the officer's conduct must be "reasonably related in scope to the circumstances which justified the interference in the first place."  State v. Dickey, 152 N.J. 468, 476 (1998) (quoting Terry, 392 U.S. at 20).  Moreover, an officer's "community[-]caretaking inquiry must not be 'overbearing or harassing in nature.'"  State v. Drummond, 305 N.J. Super. 84, 89 (App. Div. 1997) (quoting State v. Davis, 104 N.J. 490, 503 (1986)).

While there are similarities between the emergency aid and community-caretaking exceptions, they are doctrinally separate and distinct.  State v. Witczak, 421 N.J. Super. 180, 192 (App. Div. 2011).  "The community[-]caretaker exception asks whether the police are 'engaged in "functions, [which are] totally divorced from detection, investigation, or acquisition of evidence relating to the violation of a statute."'"  Ibid. (quoting State v. Cassidy, 179 N.J. 150, 161 (2004)) (second alteration in original).  The emergency aid exception focuses on an objectively reasonable belief an emergency exists and that there is a reasonable nexus between the emergency and the area to be searched.  State v. Hathaway, 222 N.J. 453, 470 (2015).

7

Having reviewed the record on appeal, we discern no basis to reject the Judge Dominguez's findings of fact given they were supported by sufficient credible evidence in the record and based on his opportunity to hear and see Nieves's testimony. See State v. Lamb, 218 N.J. 300, 313 (2014) (quoting State v. Elders, 192 N.J. 224, 244 (2007)) (recognizing that appellate review ordinarily defers to the trial judge's factual findings because they "are substantially influenced by [the judge's] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy"). And under our de novo review, we conclude the judge made sound legal conclusions that Nieves's search and seizure did not violate our state and federal constitutions. See State v. Rockford, 213 N.J. 424, 440 (2013) (stating when a trial judge's decision is based upon a legal conclusion, "we conduct a de novo, plenary review").

Defendant concedes the police officers were initially acting as community-caretakers, but, citing Diloreto, he contends the frisk and search of his person was "investigatory" and "not justified under the community-caretaking exception to the warrant requirement." We disagree.

Upon arriving at the scene, Nieves's concern was about defendant's welfare.[4] He observed defendant lying on his side on the ground, "appear[ing] to be out of it, kind of semi-conscious." Believing he was under the influence of drugs, Nieves checked to see if he was breathing or had a pulse. Once he determined defendant had a pulse, he started shaking him and calling out to him, saying "Hey, Papi." Defendant did not verbally respond but merely looked up towards Nieves and smiled. While shaking him, Nieves "brushed up against something hard and . . . conducted a pat down of his waist area[,] and [having] felt something . . . lifted up his shirt and saw the butt of a handgun."

Nieves also testified he was concerned about the safety of arriving EMS personnel, himself, and the other officer present, because he had experienced situations where individuals under the influence have "snapp[ed] out of it, whatever condition it is" and "attack EMS or . . . attack officers." His concern was further heightened by the fact that defendant was overdressed for the approximately sixty-degree weather, wearing "long johns," "a thick sweatshirt," and "[a] face mask." His training and experience suggested defendant was clothed that way to conceal a weapon. Taking from the Court's ruling in

---

[4] During the suppression hearing, a video taken from the body camera worn by Nieves was shown. However, neither party included it with the record on appeal.

Diloreto, Nieves's actions "reflected the essence of the community[-]caretaker function, revealing no motive other than an honest desire to verify defendant's" safety and well-being. 180 N.J. at 280. Accordingly, we uphold the judge's order denying defendant's motion for suppression.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION